## Lola Ryan, Guardian, Appellee, v. Oscar G. Foreman et al., Appellants.

## Gen. No. 19,030.

1. ADOPTION—*inheritance.* For all purposes of inheritance an adopted child is the lawful child of the adopting parent, except as otherwise provided by the statute.

2. ADOPTION—*under section 5 of the adoption act.* While an adopted child, under section 5 of the adoption act, may inherit from its adopting parent, it is not thereby given the right to inherit from any one except the adopting parent.

3. PENSIONS—*rights of children.* The right of a surviving child to a pension under the Police Pension Act does not depend upon the right of inheritance.

4. PENSIONS—*not a vested right.* A pension is not a matter of contract or vested right, but is a mere "bounty springing from the graciousness and appreciation of sovereignty."

5. ADOPTION—*rights of natural parents.* By section 8 of the adoption act, the natural parents of an adopted child are deprived by the decree of adoption of all legal rights as respects the child, and the child is freed from all legal obligations to his natural parents.

6. ADOPTION—*effect as to child and parent.* The adopting parents, from the date of the adoption, are legally bound to support and maintain the child so adopted, and the child thenceforth owes to them the duties which would otherwise be due to its natural parents.

7. PENSIONS—*when adopted child is entitled to.* On a petition for a writ of mandamus commanding defendants, the Board of Trustees of the Police Pension Fund to place the name of complainant upon the pension fund roll as guardian of a minor, an adopted child of a deceased member of the police force who was in continuous service for over 23 years, it is *held* that an adopted child under 16 years is such a "child" as is entitled to a continuance of the pension under the provisions of the Police Pension Fund Act.

8. PENSIONS—*construction of pension acts.* It is the duty of the courts to construe pension acts so as to give full effect to the legislative intent as indicated by the language employed and the objects sought to be accomplished thereby.

Appeal from the Superior Court of Cook county; the HON. HUGO PAM, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed May 29, 1913.

WILLIAM H. SEXTON, for appellants; JOHN W. BECK-WITH and MAX M. KORSHAK, of counsel.

FARLIN H. BALL, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from an order of the Superior Court directing the issuance of a writ of mandamus, commanding appellants, who constitute the Board of Trustees of the Police Pension Fund of the city of Chicago, to place the name of appellee, as guardian of Bernice Gibbons, a minor, upon the police pension fund rolls of the city of Chicago, in order that she may receive "all pension moneys due her as such guardian under the terms and provisions of the police pension fund act as amended." To the petition for mandamus, appellants filed a general demurrer, which was over-

ruled. They elected to stand by their demurrer and the order above stated was thereupon entered.

The petition states that in June, 1903, William Gibbons, a policeman, and his wife, Mary Gibbons, legally adopted as their own child Bernice Gibbons, who was then two years of age, and whose deceased mother was their daughter; that on August 2, 1911, William Gibbons died, after a continuous service in the police department of the city of Chicago, of over twenty-three years; that he left him surviving his widow, Mary Gibbons, and his adopted child, Bernice Gibbons, then about ten years of age; that pursuant to the provisions of the Police Pension Act, as amended, appellants, as trustees of the police pension fund, paid to the widow a pension at the rate of $600 a year up to the date of her death, which occurred on January 16, 1912; that after her death, appellee, as guardian of the adopted child, made a demand upon appellants to have the pension continued in her favor until she should arrive at the age of sixteen years, but appellants refused to comply with the demand, upon the ground that the pension act, as amended, does not authorize nor permit them to make any payment to an adopted child of a deceased pensioner.

Section 3 of the Police Pension Fund Act, as amended in 1911 (Hurd's Stat. 1912, chap. 24, p. 371), provides that whenever any person shall have served for a period of twenty years or more upon the regularly constituted police force of any city in this state having a population of 50,000 inhabitants or more, a yearly pension, equal to one-half the amount of his salary, but not less than $600 nor more than $900, shall be paid to him after his service on the police force shall have ceased, and that "after the decease of such member, his widow or minor child or children under sixteen years of age, if any survive him, shall be entitled to the pension provided for in this act, of such a deceased husband or father." By section 6 of the same act it is pro-

vided, that whenever any policeman shall die after ten years' service and while still in the service of such city as a policeman, "leaving a widow or child or children under the age of sixteen years, then upon satisfactory proof of such facts made to it, said board shall order and direct that a pension of one-half the salary, not exceeding the sum of $900, shall be paid to such widow, or if there be no widow, then to such child or children until they shall be sixteen years of age." By section 1 of said act, a police pension fund for every such city is created by setting apart for that purpose a certain portion of all moneys received from certain fines and licenses, and also "one and one-half per cent. per month, which shall be paid by or deducted from the salary of each and every policeman of such city."

The question presented by the demurrer to the petition is, therefore, whether an adopted child, under sixteen years of age, of a policeman who, at the date of his death, is entitled to a pension under said act, is such a "child" of the pensioner as is entitled to a continuance of the pension under the provisions of that act. It is admitted by counsel that there is no case in this state which directly decides this question, and our own research has been unable to find any adjudicated case in this state directly in point.

Section 5 of chapter 4 of the Revised Statutes, relating to the adoption of children, provides that an adopted child "shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation." In *Flannigan v. Howard,* 200 Ill. 396, one effect of this section,

viz: its effect as to the inheritance of property from the adopting parents, was discussed by the Supreme Court of this state. It was there held that "so far as inheritance is concerned, the adopted child is to be deemed the child of the testator, precisely the same as though born to the testator," and that when the rights of adopted children are involved, the statute of descent must be constrained in connection with this section of the adoption act. The court further said: "Our statute is copied from the Massachusetts act, and under that act it was held that, so far as the right of inheritance is concerned, an adopted child must be regarded in the light of a child born to the adopting parent. (*Sewall v. Roberts,* 115 Mass. 262.) An adopted child becomes the lawful child of the adopting parent for all purposes of inheritance, and is in the eyes of the law as much the child of such parent as though it had been his own child. (*Keegan v. Geraghty,* 101 Ill. 26; *Sayles v. Christie,* 187 Ill. 420.) The authorities are generally to the effect that for all purposes of inheritance an adopted child is the lawful child of the adopting parent, except as otherwise provided by the statute."

It is, however, urged that while an adopted child, under section 5 of the adoption act, may inherit from its adopting parent, it is not thereby given the right to inherit from any one except the adopting parent, and the case of *Keegan v. Geraghty, supra,* is cited in that connection. Such is undoubtedly the law in this state. But appellee is not seeking to recover money or property *inherited* from any one. The right of a surviving child to a pension under the Police Pension Act does not depend upon the right of inheritance. A widow is not an heir, and yet she is entitled to a pension under the act. A pension is not a matter of contract or vested right, but is a mere "bounty springing from the graciousness and appreciation of sovereignty." *Eddy v. Morgan,* 216 Ill. 437. Nor are the rights of an adopted child limited merely to the right

of inheritance from the adopting parent. The section of the adoption act above quoted not only gives to an adopted child the right of inheritance from the adopting parent, but also confers upon the adopted child all "other legal consequences and incidents of the natural relation of parents and children," with certain specific exceptions which are not here involved. One of the legal consequences and incidents of the natural relation of parents and children is that the parents are legally bound for the support, maintenance and education of the children so long as they are of tender years and unable to provide for themselves. *Plaster v. Plaster*, 47 Ill. 290, 291. By section 8 of the adoption act, the natural parents of an adopted child are deprived, by the decree of adoption, of all legal rights, as respects the child, and the child is freed from all legal obligations to his natural parents. This leaves the adopted child entirely dependent upon the parents by adoption for means of support and education. The adopting parents, from the date of the adoption, are legally bound to support and maintain the child so adopted, and the child thenceforth owes to them the duties which would otherwise be due to its natural parents. There is thus a complete severance of the natural relation of parent and child, and a substitution therefor of a legal relation which is declared to be the same as the natural relation in all its legal incidents and consequences, except only the right to take property expressly limited to bodily heirs and to inherit property from the adopting parents' kindred by right of representation. At the time the Police Pension Act was passed, the act concerning the adoption of children had been the law of this state for many years, and it must be presumed that the legislature knew that fact and used the words "child" and "children" in the pension act in the same sense as those words are used in the adoption act. By the provisions of the pension act, a certain part of the salary of every policeman

is deducted every month during his service to make up in part the fund set apart for the purpose of paying pensions to the widow and children of deceased policemen who have served the required number of years. If this portion of the salary of William Gibbons had been invested in property, there can be no doubt that his adopted child would have had the right to inherit such property. Or if the same portion of his salary had been deposited in a savings bank to his credit, or paid as premiums upon a life insurance policy, the adopted child would clearly have been entitled to share therein as fully as any natural child. It would seem to be most improbable that the legislature intended by the pension act to take away from an adopted child the rights which it had previously given to such child by the adoption act. A more reasonable view, in our opinion, is that the legislature intended the words "child" and "children" to apply to any child in fact or in law under sixteen years of age, whom the policeman entitled to a pension was legally bound to maintain and support as his child.

While no cases directly in point on this question have been cited, we are not wholly without authority in support of this view of the matter. A case which seems to us to be analagous in principle is that of *Kemp v. New York Produce Exchange,* 34 App. Div. (N. Y.) 175. In that case the Produce Exchange, in pursuance of a statutory authority, raised, by assessment upon its members, a gratuity fund which, under the statute, was required to be paid, upon the death of any member, "to his widow, children or next of kin or other persons dependent upon him," in such manner as the by-laws of the exchange might prescribe. The by-laws provided that upon the death of a member leaving a widow, but no children, the whole sum should be paid to the widow; if there was a widow and also children, one-half should be paid to the widow and the other half to the children; and if there were children

and no widow, then the whole sum should be paid "to the children for their use, share and share alike." Henry Kemp, one of the members of the Exchange, died leaving an adopted child, and a question arose precisely like the one here involved. The court said:

"The controversy is as to whether, under the terms of the by-laws, the plaintiff, as such adopted child, is entitled to the fund payable on the death of Henry Kemp. The defendant is right in its contention that the plaintiff cannot claim through Henry Kemp by succession, but directly of the defendant, under its by-laws, and that the question is the proper construction of those by-laws. * * * The question is not, what is the strict, accurate meaning of the word 'child,' but, in what sense was it used in the by-laws? Already, at the time of the passage of the act empowering the defendant to create its gratuity fund, and of the enactment of the defendant's by-laws in pursuance of such authority, adoption of children was authorized by the laws of this state. By chapter 830, section 10 of the laws of 1873, it was enacted that a child adopted under the provisions of that act, and the person adopting him, should thenceforth 'sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance.' * * * The by-laws state that the object of the gratuity fund is to provide for the families of members. As the law stood at this time, an adopted child was a member of the family of his adopter, and a dependent. Though he was not entitled to inherit from the adopting parent, still such parent could, in a proper case, be compelled to support the child, the same as a natural child. It seems to us that, even under the then existing condition of the law, the case of an adopted child fell within the terms of the by-laws, and it was entitled to share in the death fund. In 1887, however, the statute as to adoption was amended so as to give the adopted child the right of inheritance. * * * From this time the adopted child had the same rights as a natural

child, except as to limitations in deeds or wills conditioned on the death of the adopting parent without issue.''

While the Police Pension Act of this state does not in express terms state that the object of the pension payable to the widow or children is ''to provide for the families'' of deceased pensioners, we think that object is clearly implied from the provisions in favor of the widow and children of policemen who are entitled to a pension under the act.

In *Von Beck v. Thomsen,* 44 App. Div. (N. Y.) 373, affirmed 167 N. Y. 601, it was held that an adopted child was entitled to share, to the same extent as natural children, in the proceeds of certain life insurance policies issued to the adopting father, and payable to his wife if she survived him, or if not, to her children. This decision was placed upon the ground that the insurance companies had agreed to pay the amount of the policies to the persons ''who occupied the relation of children'' to the wife of the insured at the time of his death, and that the adopted child occupied that relation by virtue of the adoption laws of the state of New York. The clause of the adoption laws of New York quoted in the opinion is the same clause quoted in *Kemp v. New York Produce Exchange, supra.*

In *Virgin v. Marwick,* 97 Me. 578, an insurance policy was issued payable to the executors of Marwick ''for the benefit of his widow, if any, otherwise for the benefit of his then surviving children.'' After the policy was issued, Marwick and his wife adopted a child, and the decree of adoption provided that ''from and after the date hereof the said child shall be to all legal intents and purposes the child of said petitioners.'' The statutes then in force in Maine did not give to an adopted child the right of inheritance, but it was nevertheless held that the adopted child was entitled to the proceeds of the insurance policy, upon the

ground that the adopted child "must be regarded as the child of Captain Marwick, *not by birth, but by law.*"

In *Sewall v. Roberts,* 115 Mass. 262, the court had before it the construction of the terms of a voluntary settlement made by the father of a child by adoption, which provided for an annuity to the settler during his life, and that upon his death the principal should be paid to his executors for the benefit of his children. The adoption act then in force in Massachusetts contained the identical words of section 5 of the Illinois Adoption Act, above quoted. After quoting that section of the statute, the court said (p. 276) : "This language is very broad and comprehensive, and it was manifestly the intention of the legislature to provide that, with the exceptions named, the adopted child should, in the words of the sixth section, 'to all legal intents and purposes be the child of the petitioner.' The adopted child in this case, therefore, in construing her father's settlement, must be regarded in the light of a child born in lawful wedlock, unless the property disposed of by the settlement falls within one of the exceptions. It is true that if she takes under the settlement, the property does not come to her by inheritance, but it comes to her as one of the legal consequences and incidents of the natural relation of parents and children." Then, after pointing out that the property there in question did not fall within the statutory exceptions, the court held that the adopted child was entitled to the whole of the principal fund, precisely as though the child had been the natural child of the adopting parent.

In *Sayles v. Christie,* 187 Ill. 420, Frederick H. Mather, by his will, gave the possession, control and use of all his real estate to his wife for life, and after her death to his adopted daughter for a certain time. After his death, his widow renounced her rights under the will, and then attempted to elect, under section 12 of

the Dower Act, to take in lieu of dower, one-half of all the real and personal estate of her deceased husband remaining after the payment of his debts. She claimed the right to do this on the theory that the special act of the legislature purporting to confer upon the adopted daughter all the rights of a natural child and to make her the "heir-at-law" of the testator and his wife, was invalid, "and that therefore, Frederick H. Mather left no child." As to this contention, the court said (p. 434): "The theory thus insisted upon cannot be sustained, for the reason that the adoption of Minnie Christie by the legislative act in question was valid, and, therefore, Frederick H. Mather, when he died, left a child, so that section 12 of the Dower Act has no application to this case. The language of that section is: 'If a husband or wife die testate leaving no child or descendants of a child,' etc. (Hurd's Rev. Stat. 1897, p. 635). *Here, the adopted child, Minnie Christie, was, in the eye of the law, as much the child of Frederick H. Mather, as though she had been his natural child.* Consequently, the renunciation amounted to nothing, and did not vest Mrs. Mather with a half interest in the property."

It is contended that the pension act must be strictly construed, and the case of *Eddy v. Morgan*, 216 Ill. 437, is cited as announcing a rule to that effect. We find nothing in the opinion of the court in that case which warrants the contention. The court there merely declined to extend the recognized rules of statutory construction so as to give the act retrospective operation, in the absence of anything in the act itself to indicate that such was the legislative intention. In one part of the opinion (p. 449) the case of *Walton v. Cotton*, 19 How. (U. S.) 355, is cited as authority for the statement that a pension is "a mere matter of largess or bounty," and not "a matter of contract or vested right." In that case, certain acts of Congress granting pensions to revolutionary soldiers or in case

of their death, leaving children surviving, then to such children, were construed by the court to include grandchildren as well as children. The court there said (p. 358) : "There can be no doubt that Congress had a right to distribute this bounty at their pleasure, and to declare it should not be liable to the debts of the beneficiaries. But they will be presumed to have acted under the ordinary influences which lead to an equitable and not a capricious result. And where the language used may be so construed as to carry out a benign policy, within the reasonable intent of Congress, it should be done." These cases are far from holding that pension acts of this sort must be strictly construed, but on the contrary, they hold that it is the duty of the courts to construe them so as to give full effect to the legislative intent as indicated by the language employed and the objects sought to be accomplished thereby.

We conclude, therefore, both upon reason and authority, that appellee, as the guardian of Bernice Gibbons, the adopted child of William Gibbons, deceased, is entitled to receive for the benefit of such child, until the latter arrives at the age of sixteen years, the same pension as if said child were born to William Gibbons and his wife. As to the claim that this construction of the act may open the door to fraud on the part of police officers, it is sufficient to say that it will be time enough to consider what effect a fraud such as is suggested by appellants' counsel may have, when a case of that kind is presented. No such case is presented by this record.

The demurrer to the petition was properly overruled, and the order of the Superior Court will be affirmed.

*Affirmed.*