LOLA RYAN, ·Guardian, Appellee, *vs.* OSCAR G. FOREMAN *et al.* Appellants.

*Opinion filed February 21, 1914.*

POLICE PENSIONS—*adopted child of policeman has same right in pension fund as a natural child.* An adopted child, under sixteen years of age, of a person who at the time of his death has served as a policeman long enough to be entitled to a pension under the Police Pension Fund act, or whose widow or children would be entitled to a pension at his death, is entitled to a continuance of the pension after the widow's death the same as a natural child. (*Eddy* v. *Morgan,* 216 Ill. 437, explained.)

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, (JOHN W. BECKWITH, and MAX M. KORSHAK, of counsel,) for appellants.

FARLIN H. BALL, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal from the judgment of the Appellate Court for the First District affirming the judgment of the superior court of Cook county in overruling a demurrer to a petition for *mandamus* filed in said superior court of Cook county by Lola Ryan, as guardian of Bernice Gibbons, a minor, against appellants, as the board of trustees of the police pension fund of the city of Chicago. To such petition appellants demurred generally. The superior court overruled the demurrer and directed the issuance of a writ of *mandamus* against appellants as prayed in the petition. From the judgment of the superior court of Cook county appellants prosecuted an appeal to the Appellate Court for the First District, which affirmed the judgment of the trial court.

The facts presented by the petition for *mandamus* and admitted by the demurrer are as follows: The city of Chicago was incorporated and exists under the general act of 1872 for the incorporation of cities and villages and acts amendatory thereof. It has now, and for more than thirty years past has had, a population of more than fifty thousand, and is, and has been since the passage of said act, operating under and amenable to the provisions of "An act to provide for the setting apart, formation and disbursement of a police pension fund in cities, villages and incorporated towns," generally known as the Police Pension Fund act, in force July 1, 1887, and amendments thereto. Appellants constitute the board of trustees of the police pension fund of said city. Appellee is the legal guardian of one Bernice Gibbons, a minor of the age of eleven years in July, 1912, under letters of guardianship granted by the probate court of Cook county. Said minor is not now, and never had been, married. On August 2, 1911, one William Gibbons died in Chicago. At the time of his death he was, and for more than twenty-three years theretofore had continuously been, a regular policeman in the police department of said city. More than eight years prior to his decease said William Gibbons and his wife, Mary Gibbons, by a proceeding in the circuit court of Cook county, legally adopted Bernice Gibbons, now the ward of appellee. Said adopted child was a grand-daughter of her said adoptive parents, her mother, then deceased, having been a daughter of said William and Mary Gibbons, and her father then, as now, being confined in the asylum for the criminal insane at Chester, in this State, for the killing of his wife, the mother of said Bernice. She is the only surviving child of said William and Mary Gibbons under the age of sixteen years, and resided with and was cared for, educated and maintained by said William Gibbons from the time of her adoption to the date of his decease. When William Gibbons died he left him surviving, in addition to his said adopted child, a widow,

said Mary Gibbons. To said widow the board of trustees
of the police pension fund duly granted a pension of $600
per annum, (the minimum amount fixed by the act,) which
sum was paid by said board to said widow out of the police
pension fund of said city from the date of the death of
her husband until her decease. The widow did not re-marry
after the decease of said William, but continued to support,
maintain, care for and educate their adopted child, Bernice,
who resided with her until she (the widow) died, in Janu-
ary, 1912. Upon the death of the widow demand was made
upon the board of trustees of the police pension fund for
the payment to appellee, as guardian of said Bernice Gib-
bons, of a pension similar in amount to that theretofore
paid to the widow of said William Gibbons, such payments
to continue until such minor should attain the age of sixteen
years, unless sooner married, with which demand said board
refused to comply. There are ample moneys in said pen-
sion fund to pay appellee the pension demanded.

The Police Pension Fund act, as amended, (Hurd's Stat.
1911, p. 370,) provides for the payment to a person who
shall have served as a regular policeman for a period of
twenty years or more in the city police department, after his
services in such department shall have ceased, of a yearly
pension, with a maximum and minimum limit, and after his
death for the payment of a like pension to his widow, or
child or children under sixteen years of age. Section 3 of
the act reads as follows:

"Sec. 3. *Service for twenty years.*—Whenever any per-
son shall have been or shall hereafter be appointed and
sworn either as a probationary or regular policeman, and
shall have served for a period of twenty years or more in
the police department of such city, village or town of this
State, subject to the provisions of this act, or where the
combined years of service of such person in the police de-
partment and fire department of such city, village or town,
shall aggregate twenty years or more, said board shall order

262 — 12

and direct that such person, after his service in such police department shall have ceased, shall be paid a yearly pension equal to one-half the amount of the salary attached to the rank which he may have held in said police department for one year immediately prior to the time of such retirement: *Provided, however,* the maximum of said pension shall not exceed the sum of $900, and the minimum be not less than $600 per annum; and after the death of such person pensioned by virtue of this section of the act to which this is an amendment, or any acts amendatory thereof, the widow or child or children under sixteen years of age of any such pensioner who died prior to the taking effect of this amendment, shall hereafter be paid the pension herein provided for such husband or father; but nothing herein contained shall warrant the payment of any annuity to any such widow after she shall have re-married: *And provided, further,* that all policemen retired after twenty years' service in the police department (or where the combined years of service of such person in the police and fire departments shall aggregate twenty years or more) now receiving a pension, shall receive the same pension now allowed them, and that the widow or child or children under sixteen years of age of any deceased pensioner, pensioned as aforesaid, shall receive the same pension heretofore received by such deceased husband or father: *Provided,* that in no case shall said pension exceed the sum of $900 per annum."

Section 6 of the act provides that whenever any policeman shall die after ten years' service and while still in the service of such city as a policeman, leaving a widow, or child or children under the age of sixteen years, then said board shall pay to such widow, or if there be no widow then to such child or children until they shall be sixteen years of age, unless sooner married, a pension of one-half the salary of such policeman, not exceeding $900 a year. Appellee, under section 3 of the act, claims a pension of $600 per annum.

It is over the construction of the words "child or children," as used in the above mentioned act, that the controversy in the case arises. Appellee contends that under a proper construction of the words, said Bernice Gibbons, as the legally adopted child of said William Gibbons, is as much entitled to a pension under said act as she would be were she the natural child of the said William Gibbons. Appellants, on the other hand, insist that said Bernice Gibbons, being the adopted child of said William Gibbons and not his natural child, is not entitled, under a proper construction of said act, to the payment of any pension thereunder.

The question presented by the demurrer is whether an adopted child under sixteen years of age, of one who at the time of his death had served as a policeman long enough to be entitled to a pension, or whose widow or children would be entitled to a pension on his death, is such a child as would be entitled to a continuance of such pension after the death of the widow. This question was raised by the demurrer to the petition, and its decision depends upon the construction of the law of adoption of this State and the Police Pension Fund law. It is set out in the petition for *mandamus,* and admitted by the demurrer, that appellee's ward was legally adopted.

Section 3 of the Adoption act, (Hurd's Stat. 1912, p. 35,) which was in force at the time of the adoption in this case, provides: "A decree shall be made, setting forth the facts and ordering that from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners, and may decree that the name of the child be changed according to the prayer of the petition." Section 5 of the same act is as follows: "A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the nat-

ural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

Our statute of adoption was enacted in 1867. The Police Pension Fund act first went into effect July 1, 1887. While said act has been several times amended, such amendments are not material to the question at issue, the beneficiaries remaining the same, being the widow or minor child or children of the pensioner. When the Police Pension Fund law was passed the law of adoption had been in force for twenty years.

The legislature had full power to enact the Police Pension Fund law and direct how the fund should be raised and also direct to whom it should be paid. While the legislature has not the power to abrogate the laws of nature and say who shall be natural children or offspring, it has the right to say and designate a class of persons who shall have all the rights of children or shall stand in the relation of parents and children. The legislature has provided by the Police Pension Fund law that on the death of a policeman entitled to a pension, or who has served as a policeman for more than ten years continuously prior to his death, his widow shall be paid a pension, and if no widow, his child or children shall be paid said pension until they shall be sixteen years of age. The legislature has also designated by law that an adopted child is to all legal intents and purposes the child of the adopting parent, and "shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, *and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock,*" the only exception being that "he shall not be capable of taking property expressly

limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

The right of anyone, other than a policeman, to participate as a beneficiary under the Police Pension Fund law depends upon the relation to the policeman. A wife can take or a child can take, or one who, by reason of the law, has the status of wife or child. The ward of appellee has that status given her by law. It would hardly be presumed that the legislature of this State would declare that after adoption, as prescribed by law, a person should be to all legal intents and purposes the child, and should be deemed for purposes of inheritance and other legal consequences and incidents of the natural relation of parents and children the child of the parents by adoption, the same as if born in lawful wedlock, and then say by another law, in which no exception that would apply to the Police Pension Fund law is made, that he would not be such child.

The legal consequences and incidents arising from the relation of parent and child are many, and change, as time goes on, with changes of society, and vary according to the circumstances and means of the parties. They include the right of support, education and care from the parent by adoption. All such legal consequences and incidents are known to the law and embraced within the statute. Among such legal consequences and incidents are the rights of the children of deceased police officers of certain cities to participate in a pension fund that has been provided by law.

Sections 3 and 5 of the Adoption act above set forth and the sections of the Police Pension Fund act are to be construed in conjunction with each other and with all existing statutes and laws. While statutes of adoption are to be strictly construed, it was held by the Supreme Court of California that the California statute of adoption, which provided that "after adoption the two [adopting parent and adopted child] shall sustain towards each other the legal

relation of parent and child and have all the rights and be subject to all the duties of that relation," included the right of inheritance by the adopted child from the deceased adopting parent. (*In re Newman,* 75 Cal. 213; 16 Pac. Rep. 887; *Estate of Wardell,* 57 Cal. 491.) The Supreme Court of South Dakota held that under the same kind of a statute of adoption, which was taken from the California code, the parent by adoption could inherit from the adopted child. *Calhoun* v. *Bryant,* 28 S. Dak. 266.

In *Ross* v. *Ross,* 129 Mass. 246, which is one of the leading cases on adoption, it was held that adoption, like marriage, fixes a relation, and establishes the fact that the person adopted is in law, and as to all legal consequences flowing from that relation, a child of the adopter.

In *Butterfield* v. *Sawyer,* 187 Ill. 598, this court held that an adopted child was the child of the adopter, within the meaning of a deed conveying the life estate to the adopter with a remainder over to her "child or children," although there was no statute of adoption in Illinois at the time the deed was made.

In *Fosburgh* v. *Rogers,* 114 Mo. 122, the court says: "Plaintiff's next point is, that the devolution of title in Missouri in the event of intestacy is governed by the Statute of Descent, (Rev. Stat. 1889, chap. 51,) and that the law of adoption cannot properly be construed to amend the former by implication. We find elsewhere so direct an answer to the contention that we adopt it here for the purposes of this case: 'But this section' [namely, the Statute of Descent,] 'must be understood as merely laying down general rules of inheritance, and not as completely and accurately defining how the status is to be created which gives the capacity to inherit. It does not undertake to prescribe who shall be considered as a child or a widow or a husband, or what is necessary to constitute the legal relation of husband and wife or of parent and child. Those requisites must be sought elsewhere. The words 'children' and 'child,' for in-

stance, in the first clause, 'issue' in the phrase 'if he leaves no issue' in subsequent clauses, and 'kindred' in the last two clauses of this section, clearly include a child made legitimate by the marriage of its parents and acknowledged by the father after its birth under section 4 of the same chapter, or a child adopted under the provisions of chapter 110 of the general statutes or chapter 310 of the statutes of 1871.' "

In *Flannigan* v. *Howard,* 200 Ill. 396, this court held that a child adopted after a will is made is within the meaning of section 10 of the Statute of Descent, which provides that if a child shall be born to a testator after his will is made, and there is no provision made in the will for such child and no intention to disinherit it appears, the legacies and devises shall be abated to raise an amount equal to that which the child would have received had the parent died intestate. The court in its opinion says: "By this section [section 6 of the Adoption act] an adopted child, for the purpose of inheritance and other legal consequences and incidents of the natural relation of parents and children, is declared to be, in law, the child of the parents, the same as if he had been born to them in lawful wedlock, except as therein stated. By the plain and unambiguous language of the statute the right of plaintiff in error to inherit from Bridget Howard is made identical with the right of a child born to her, and when plaintiff in error became her child by adoption after the making of the will, the effect, in law, was precisely the same as the birth of a child to the testatrix. The argument against the rights of plaintiff in error is solely on the ground that she was not, as a matter of fact, born to the testatrix, and therefore not the sort of a child mentioned in the Statute of Descent. This argument would apply with equal force to other sections of the same act which provide for the descent of intestate property to children of the decedent, making no reference to children by adoption. By accepted definitions a child is the immediate

progeny of human parents, and in its natural meaning the word applies to offspring born to such parents. By the statute, however, the relation of parent and child is recognized and declared as legally existing between persons not so related by nature. The Statute of Descent does not, in any case, mention this legal relation of an adopted child and the adopting parent, but the right of the adopted child is fixed by the act providing for adoption, which creates, in law, the relation of parent and child. The purpose of section 10 of the act in regard to descent is to give a child who shall come into existence after the making of a will, and who would inherit but for the will, the same rights it would have if the estate were intestate, where no provision is made in the will for such child and no contrary intention is expressed in the will. The act says that if a child shall be born to a testator after the making of a will such child shall have the rights of inheritance therein specified, and the act providing for the adoption declares that the adopted child shall have the same right as a child born to such testator. So far as inheritance is concerned, the adopted child is to be deemed the child of the testator, precisely the same as though born to the testator. This is the construction given to a statute in all material respects like our own, by the Supreme Court of Iowa in *Hilpipre* v. *Claude,* 109 Iowa, 159. The Iowa statute provides that 'the subsequent birth of a legitimate child to the testator before his death will operate as a revocation.' The statute providing for the adoption of children confers upon the adopted child 'all the rights, privileges and responsibilities which would pertain to the child if born to the person adopting, in lawful wedlock,' and that 'the rights, duties and relations between parent and child by adoption shall thereafter in all respects, including the right of inheritance, be the same that exists by law between parents and children of lawful birth.' In that case it was held that the adoption of a child subsequent to the making of a will by the adopting parent operated as a revocation

of the will.   Our statute is copied from the Massachusetts act, and under that act it was held that, so far as the right of inheritance is concerned, an adopted child must be regarded in the light of a child born to the adopting parent. (*Sewall* v. *Roberts*, 115 Mass. 262.)   An adopted child becomes the lawful child of the adopting parent for all purposes of inheritance, and is in the eyes of the law as much the child of such parent as though it had been his own child."

In *Sayles* v. *Christie*, 187 Ill. 420, this court held that an adopted child was such a child as was contemplated by portions of the Dower act.   The court says:   "The theory thus insisted upon cannot be sustained, for the reason that the adoption of Minnie Christie by the legislative act in question was valid, and therefore Frederick H. Mather, when he died, left a child, so that section 12 of the Dower act has no application to this case.   The language of that section is:   'If a husband or wife die testate leaving no child or descendants of a child,' etc.   (Hurd's Rev. Stat. 1897, p. 635.)   Here the adopted child, Minnie Christie, was in the eye of the law as much the child of Frederick H. Mather as though she had been his natural child, consequently the renunciation amounted to nothing and did not vest 'Mrs. Mather with a half interest in the property.   The position is well sustained by authority, that inasmuch as the adopted child becomes and is the lawful child of the adopting parent for all the purposes of inheritance from such adopting parent, the widow of a deceased testator who died leaving such adopted child cannot elect to take one-half of her husband's real estate under the statute."

In *Sandon* v. *Sandon*, 123 Wis. 603, the Supreme Court holds:   "Section 2286 (Stat. 1898) provides that 'when any child shall be born after the making of his parents' will and no provision shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate, and the share of such child shall be assigned to him as provided by law in case of intestate estates, unless

it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child.' This section appeared in the Revised Statutes of 1849 (sec. 26, chap. 66,) and has remained unchanged since that time. Sections 4021-4024 (Stat. 1898) provide for the adoption of children by legal proceedings, and section 4024 declares that 'a child so adopted shall be deemed for the purpose of inheritance and succession by such child, * * * and all other legal consequences and incidents of the natural relation of parents and children, the same, to all intents and purposes, as if the child had been born in lawful wedlock of such parents by adoption,' with an exception not affecting the present inquiry. This court held in *Glascott* v. *Bragg,* 111 Wis. 605, (87 N. W. Rep. 853,) that a legal adoption under the statute was equivalent, save for the exception noted, to the birth of a child in wedlock. In the present case there is no question as to the legal adoption of the child, Ellen, after the making of the will. And the court holds that the rights of a child legally adopted are, under the will in question, equivalent to those of a child born in wedlock."

In *Power* v. *Hafley,* 85 Ky. 671, at pages 675 and 676, the court thus construes the word "child" as it occurs in the statutes of that State: "The word 'kindred,' in section 1, chapter 31, General Statutes, is not necessarily confined to blood relations, nor is the word 'children,' in section 1, necessarily confined to children born in lawful wedlock, for those sections 'must be understood as merely laying down the general rules of inheritance, and not as completely defining how the status is to be created which gives the capacity to inherit.' Section 1 does not undertake to define the word 'kindred.' The word may include in its meaning children born in lawful wedlock and children made legitimate by the marriage of their parents and children by adoption, for the latter are the legal children of their adoptive parents."

In *Kemp* v. *New York Produce Exchange,* 54 N. Y. Supp. 678, the produce exchange, a New York corporation, was by statute empowered to assess such of its members as might agree thereto, for the formation of a fund to be paid upon the death of any member to his widow, children, next of kin or other persons dependent upon him, in such manner as the by-laws of defendant might prescribe. Under this authority a fund was raised. The by-laws of the exchange provided that if a member died leaving a widow but no children the whole sum should be paid to the widow; if a widow and children, then one-half to the widow and one-half to the children; if children but no widow, then the whole sum should be paid "to the children for their use, share and share alike." The court said: "Henry Kemp, a member of the exchange and a contributor to the fund, died leaving no widow, children or remote issue and without next of kin except plaintiff, who was adopted by him as a child under the laws of this State. The controversy is whether under the terms of the by-laws the plaintiff, as such adopted child, is entitled to the fund payable on the death of Henry Kemp. The question is not what is the strict, accurate meaning of the word 'child,' but in what sense it was used in the by-laws. Already at the time of the passage of the act empowering the defendant to create its gratuity fund and of the enactment of the defendant's by-laws in pursuance of such authority, adoption of children was authorized by the laws of this State. By chapter 830 of the laws of 1873 it was enacted that a child adopted under the provisions of that act, and the person adopting him, should thenceforth sustain toward each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation, excepting the rights of inheritance. The statute of 1882 authorized the payment, from the gratuity fund, to the widow, children, next of kin or other persons dependent on the deceased member. The by-laws state that the object of the gratuity fund is

to provide for the families of members. As the law stood
at this time, an adopted child was a member of the family
of his adopter and a dependent. Though he was not entitled
to inherit from the adopting parent, still such parent could,
in a proper case, be compelled to support the child the same
as a natural child. It seems to us that, even under the then
existing conditions of the law, the case of an adopted child
fell within the terms of the by-laws and it was entitled to
share in the death fund. In 1887, however, the statute as
to adoption was amended so as to give the adopted child the
right of inheritance. (Laws of 1887, chap. 703.) The ef-
fect of this amendment was to modify the statutes of dis-
tribution and descent. (*Dodin* v. *Dodin,* 16 App. Div. 42.)
From this time the adopted child had the same rights as a
natural child, except as to limitations in deeds or wills con-
ditioned on the death of the adopting parent without issue."

In *VanBeck* v. *Thomsen,* 44 App. Div. (N. Y.) 373, a
child was adopted by husband and wife after a policy of in-
surance had been issued upon the husband's life, payable to
the wife, and in case of her failure to survive her husband,
to her child. The court held that an adopted child was en-
titled to the insurance the same as a natural child; that the
insurance company by its policy agreed to pay to the per-
sons who occupied the relation of children to the insured
or his wife at the time of his death.

In *Virgin* v. *Marwick,* 97 Me. 578, an insurance policy
was payable for the benefit of the widow of the insured,
if any, otherwise for the benefit of the surviving children.
Marwick and his wife, after the issuance of the policy,
adopted a child, the decree of adoption providing: "From
and after the date hereof the said child shall be, to all legal
intents and purposes, the child of said adopters." The court
held that the adopted child was entitled to the proceeds of
the insurance policy, upon the ground that the adopted child
"must be regarded as the child of Capt. Marwick,—not by

birth but by law." The statutes then in force in Maine did not give to the adopted child the right of inheritance.

Counsel for appellants have cited *United States* v. *Skam,* 27 Fed. Cas. 308, as holding that an adopted child is not entitled to a pension. The United States circuit court of the District of Columbia did so hold, but in that part of the opinion where such language occurs the court evidently meant a child adopted merely by word or act of adoption and without any legal or statutory adoption being made. The court further held in that case that an illegitimate female child, if her parents afterward intermarry and the husband acknowledges the child, becomes legitimate by the law of Maryland of 1786 (chap. 45, par. 7,) and entitled to a pension under the laws of the United States if the mother marries again. The opinion does not hold that a child legally adopted under a statute of adoption would not be entitled to a pension in a proper case, the same as a natural child. The opinion, in effect, holds the other way from that contended for by counsel for appellants, for it holds that the child in question was entitled to a pension because, although born an illegitimate child and not the lawful child of the father, nevertheless, by operation of law,—that is, the marriage of the parents subsequent to the birth of the child and the recognition of the child by its father as his child,—it acquired the rights of a child born in lawful wedlock, including the right to a pension.

Counsel for appellants cite the case of *Eddy* v. *Morgan,* 216 Ill. 437, as holding that under the Police Pension Fund act no vested rights in the beneficiary are created and the act may be repealed at any time. While this is true, it is equally true that the legislature may at any time change any law of descent or inheritance as well as the beneficiary under the Police Pension Fund law. The *Eddy case* held that the amendment of 1899 to the Police Pension Fund a/ of 1887 is not retroactive, so as to entitle the widow of/ pensioner who died before the passage of the amendm/

to a pension under its provisions. That case also cites the cases of *Walton* v. *Cotton,* 19 How. 355, and *Frisbee* v. *United States,* 157 U. S. 160, as holding that a pension is "merely a matter of largess or bounty from a sovereign and not a matter of contract or vested right." In the *Walton case* the Supreme Court of the United States, in construing the two congressional sections of the enactment of July 19, 1840, held that the word "children," as used in those sections, should not be more restricted than when used in a will; that unless there is something to indicate a different meaning, the word "children" is often held to mean grandchildren.

The other authorities cited by counsel for appellants are not in point. They hold that statutes of adoption are to be strictly construed, and that the parties affected thereby take only such rights and assume such liabilities as are provided by the statute. That is true of the case under consideration. The whole subject is within the control of the legislature, and we believe it was the intent of the legislature in enacting the Police Pension Fund law to include within its provisions not only natural children of pensioners, but also those who stood in the natural relation of children by being children by adoption, and who therefore are to be regarded, in law, as children.

We think that the right of appellee's ward to the pension demanded from appellants, and to be paid from the pension fund, was one of the legal consequences and incidents resulting from her adoption. As stated in the opinion of the Appellate Court, a portion of this fund was accumulated by deductions from the monthly pay of the foster father. Had this been invested in property or deposited in a savings bank, and had the foster father died intestate, appellee's ward would have received her portion as heir.

For the reasons given, the judgment of the Appellate rt for the First District affirming the order of the su-r court of Cook county will be affirmed.

*Judgment affirmed.*