Frances Dwyer, Appellee, v. Thomas L. Dwyer, Appellant.

Gen. No. 38,908.

Opinion filed October 13, 1936. Rehearing denied October 26, 1936.

SOCRATES, DAVIS & COHEN, of Chicago, for appellant; NICHOLAS A. SOCRATES, of counsel.

TEED, KAMMERMANN & JOHNSON, of Chicago, for appellee; HUGH E. JOHNSON, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal defendant, Thomas L. Dwyer, seeks to reverse a judgment entered January 15, 1936, by the superior court of Cook county by which he was found to be in default in failing to pay $10 a week to complainant, as theretofore ordered, for the support and maintenance of a minor child of the parties. For such failure he was adjudged to be in contempt of court and it was ordered that he be committed to the common jail of Cook county for a period not to exceed six months.

The record discloses that on April 15, 1927, a decree of divorce was entered in favor of complainant against defendant in which it was found that the parties were

married September 27, 1923; that September 28, 1924, defendant deserted and abandoned complainant. The decree further found "there was born to the parties . . . one child, Thomas E. Dwyer, now aged about three years," and that by a decree heretofore entered . . . by the County court of Cook county, the "child has been adopted by his maternal grandparents." December 31, 1934, more than seven years after the decree of divorce, complainant filed her verified petition in the divorce suit in which she set up the marriage, the divorce, and the birth of the child, Thomas E. Dwyer, who was then alleged to be about 11 years old; that April 14, 1927, which was the day before the decree of divorce was entered, the child was adopted by Peter B. Hauber and Agnes M. Hauber, his wife, parents of complainant, by proceedings in the county court of Cook county, the child's name was changed to Thomas E. Hauber, and both complainant and defendant entered their appearance in the county court and consented to the adoption. It was further alleged in the petition that in the divorce suit complainant waived "alimony and all other claims against defendant"; that after the decree of divorce complainant lived with her parents, who had adopted the minor child, until April 23, 1931, at which time complainant's father, Peter B. Hauber, died; that from the time of the adoption Peter B. Hauber supported and maintained the child until the day of his death, and that Peter B. Hauber's estate was insolvent at the time he died; that after the death of Peter B. Hauber complainant and the child continued to live with Agnes M. Hauber, her mother (and the adopted mother of the child) until September, 1933, during which time complainant "was bearing the major portion of support of herself, the minor child and the said Agnes M. Hauber"; that in September, 1933, Agnes M. Hauber remarried and moved from Chicago, where she was living, to the

State of Texas, and that since that time the minor child has been supported by complainant. It is further averred that on December 17, 1934, complainant filed a petition in the county court of Cook county to readopt the child, Thomas E. Hauber, and on December 21, 1934, a decree was entered in accordance with the prayer of the petition, and the name of Thomas E. Hauber was changed to Thomas E. Dwyer; that since the time defendant deserted complainant he has made no contribution toward its support; that after the remarriage of complainant's mother in September, 1933, complainant has frequently requested defendant to contribute to the support of the child, but he has refused to do so. It further appears that defendant, the father of the child, was not a party to the readoption proceeding and had no notice or knowledge of it until complainant filed her petition in the instant case.

The prayer was that an order be entered requiring defendant to pay a reasonable sum for the support and maintenance of the minor child and for complainant's attorney's fees.

January 4, 1935, defendant filed his answer admitting most of the allegations, but setting up that by virtue of the decree of adoption he was relieved of further responsibility for the support of the child. The issue thus raised was heard by the chancellor and on January 25, 1935, an order was entered that defendant pay to complainant $10 a week for the support of the child and $50 to complainant for solicitor's fees she had incurred. June 19, 1935, the court entered an order which tends to show that complainant was endeavoring, unsuccessfully, to collect the $10 a week and that defendant was likewise endeavoring to have the order requiring him to pay the $10 set aside and vacated. June 27, 1925, an order was entered which recites that the matter came on to be heard "on the return of the rule to show cause," etc., that the court

heard the evidence, "and it appearing that the defendant has paid the amount accrued under the rule to show cause heretofore entered herein," it was ordered that the rule be dismissed, and it was further ordered that defendant pay to complainant $75 solicitor's fees within 30 days.

January 3, 1936, complainant filed another petition in which she alleged that defendant was in default in the payment of $10 a week as ordered, and prayed that he be required to show cause why he should not be punished for contempt of court. An order was entered accordingly, and on January 15 defendant answered, admitting that he is a practicing physician, but denying that he is well able to support the minor child, admitting he was in default in making payments to the extent of $40, and contending that the court was without jurisdiction to enter the order requiring the payment of $10 a week for the support of the child. January 15, 1936, the matter was heard on the petition and answer, and defendant found to be in contempt of court, and it was ordered that he be committed to the common jail for a period not to exceed six months.

Defendant contends that the court was without jurisdiction to enter the order requiring him to pay $10 a week for the support of the child, because of its adoption by its maternal grandparents, and therefore the order adjudging him to be in contempt of court was void. If the order was void, defendant may contest its validity by refusing to obey it, and raise the question in a prosecution for a contempt against him. *Carden v. Ensminger,* 329 Ill. 612; *Flannery v. People,* 225 Ill. 62.

The question for decision therefore is, did the court, under the facts disclosed by the record, have jurisdiction to enter the order requiring defendant to pay complainant $10 for the support of the child? We

think the question must be answered in the negative. *Ryan v. Foreman,* 181 Ill. App. 262 (affirmed in 262 Ill. 175) ; *Mitchell v. Brown,* 18 Cal. App. 117 ; *Younger v. Younger,* 106 Cal. 377 ; *Matter of MacRae,* 189 N. Y. 142 ; 1 Corpus Juris, p. 1397, sec. 124.

Chap. 4 of the Ill. State Bar Stats. 1935 authorizes the adoption of children and provides for the procedure in such matters. Sec. 1 provides that any reputable person may petition the circuit court or county court for leave to adopt a child not his own. Sec. 3 provides that the court shall find, if such be the fact, that the parents consent to such adoption, and other requirements approved by the statute are met, "a decree shall be made, setting forth the facts and ordering that from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners, and may decree that the name of the child be changed according to the prayer of the petition." Sec. 5 of the act specifies the rights of the adopted child "shall be deemed, for the purpose of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation." And by sec. 6 it is provided that "The parents by adoption and their heirs shall take by descent, from any child adopted under this or any other law in this State for the adoption of children . . . only such property as he has taken or may hereafter take from or through the adopting parents, . . . but the parents by adoption and their heirs shall not inherit any property which such child may take or have taken by gift, bequest, devise or

descent, from his kindred by blood.'' Sec. 8 provides, ''The natural parents of a child so adopted shall be deprived, by the decree, of all legal rights, as respects the child, and the child shall be freed from all obligations of maintenance and obedience as respects such parents.''

In *Ryan v. Foreman,* 181 Ill. App. 262, a policeman of Chicago and his wife adopted their granddaughter who was under 16 years of age at the time of the adoption. Afterwards the policeman died, leaving him surviving his widow and the adopted child. The widow applied for a pension under the Police Pension Fund Act and was granted a pension of $600 per annum. The widow continued to support and maintain the adopted child, who resided with her until the widow died. Thereafter the guardian of the adopted child (a minor) applied for a pension. The Police Pension Fund Act provided that after the death of a policeman who had been employed for more than 20 years in the police department, a pension would be paid to his widow or ''child or children under sixteen years of age,'' and it was held that the adopted child came within the provisions of the act and was entitled to a pension. An appeal was taken to this court where the judgment was affirmed. The court there said (pp. 266, 267): ''Nor are the rights of an adopted child limited merely to the right of inheritance from the adopting parent. The section of the adoption act above quoted not only gives to the adopted child the right of inheritance from the adopting parent, but also confers upon the adopted child all 'other legal consequences and incidents of the natural relation of parents and children,' with certain specific exceptions which are not here involved. One of the legal consequences and incidents of the natural relation of parents and children is that the parents are legally bound for the support, maintenance and education of the children so long as they

are of tender years and unable to provide for themselves. *Plaster v. Plaster,* 47 Ill. 290, 291. By section 8 of the Adoption act the natural parents of an adopted child are deprived, by the decree of adoption, of all legal rights, as respects the child, and the child is freed from all legal obligations to his natural parents. This leaves the adopted child entirely dependent upon the parents by adoption for means of·support and education. The adopting parents, from the date of the adoption, are legally bound to support and maintain the child so adopted, and the child thenceforth owes to them the duties which would otherwise be due to its natural parents. There is thus a complete severance of the natural relation of parent and child, and a substitution therefor of a legal relation which is declared to be the same as the natural relation in all its legal incidents and consequences, except only the right to take property expressly limited to bodily heirs and to inherit property from the adopting parents' kindred by right of representation.'' The court then discusses cases somewhat analogous from New York, Maine, and Massachusetts, and the case of *Sayles v. Christie,* 187 Ill. 420, which holds, in substance, that the relation between an adopted child and the adopting parents is the same as the relation between a child and its natural parents except as to the question of inheritance, and the court quoted from page 435 of the *Sayles* case the following: *''Here the adopted child, Minnie Christie, was, in the eye of the law, as much the child of Frederick H. Mather, as though she had been his natural child.''* On appeal of the *Ryan* case to the Supreme Court (262 Ill. 175) the court after discussing the Police Pension Fund Act, and referring to the adoption law of this State, said (p. 180) : ''The legislature has also designated by law that an adopted child is to all legal intents and purposes the child of the adopting parents, and 'shall be deemed, for the purposes of in-

heritance by such child, and his descendants and husband or wife, *and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock,'* the only exception being that 'he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption nor property from the lineal or collateral kindred of such parents by right of representation.' '' The Supreme Court then discusses a number of authorities from this and other States on the question of the adoption of children, and affirmed the judgment of the Appellate Court.

In the instant case, by the decree of adoption the minor child, as said by the Supreme Court in the *Ryan* case, was ''to all legal intents and purposes the child of the adopting parent,'' and, in addition to the rights of inheritance, to ''other legal consequences'' and incidents of the natural relation of parents and children, the same as if it had been born to them in lawful wedlock. It follows, therefore, that after the decree of adoption the adopting parents become liable for the support of the adopted child, and the natural father was relieved of such obligations, as said by this court in the *Ryan* case, above quoted. The court therefore had no jurisdiction to enter the order requiring the natural father to pay $10 a week as above stated, for the support of the child.

The only case tending to hold that the natural father of a minor child was liable for its maintenance after the child had been adopted is *McNemar v. McNemar,* 137 Ill. App. 504. In that case Noah B. McNemar, the natural father of a minor child, brought suit against his father, Christian J. W. McNemar, who had adopted the child, to recover for board, clothing and medical care of the minor child while in possession of the plaintiff. There was a directed verdict for the defendant,

the plaintiff appealed, and the judgment was affirmed. The court there said (p. 506): "It is well settled in our state that the relation that exists between parent and child is of so intimate a character that the law never implies a contract to pay money either for support or service, and in the absence of an express promise to pay for the same no recovery can be had by one against the other. The law indulges the general presumption that what is done for each other by parties thus nearly related is done gratuitously and as the prompting of natural affection. . . ."

(p. 507): "The statute governing adoption in our state makes an adopted child the same as if he had been born of the adopting parents in lawful wedlock for the purpose of inheritance, yet such statute also provides that such parents by adoption shall take by descent from the child adopted, only such property as he may take through the adopting parents. The statute leaves the rights of inheritance between such adopted child and his natural parent the same as though no adoption had taken place as to all property not inherited or taken by the child from its adopting parents, and does not in terms or by implication attempt to relieve a natural parent from the duty he owes his child to care for and support him. The aim and purpose of the statute was not to destroy or impair the relation that exists between parent and child, but rather to preserve and continue it.

"The relation of parent and child is not ended by the adoption, but fostered instead, and since the father is primarily liable for the support and care of his own child, we hold that the natural father cannot recover for the care and support of his child while in his own home and custody, against a parent by adoption, in the absence of an express agreement to pay.

"In the case before us there is no claim made that appellee in any way or at any time promised appellant that he would pay for the board or care of Leon."

We are unable to agree with what is said in the opinion just quoted. As said by the Appellate and our Supreme Court in the *Ryan* case, the statute of adoption related not only to the matter of inheritance between the adopting parents and the child adopted, but it also expressly states that other legal consequences and incidents are provided for and that the relations between the parents by adoption and the child adopted are the same ''as if he had been born to them in lawful wedlock.''

For the reasons stated the judgment of the superior court of Cook county is reversed, but since we hold that the trial court was without jurisdiction for the reasons stated, the matter will not be remanded.

*Judgment reversed.*

MATCHETT, P. J., concurs.

MR. JUSTICE McSURELY dissenting: The adoption proceedings by the mother revoked absolutely the prior adoption and restored the minor child to his natural parents, with all their legal obligations to support him. His status then was as if his legal and natural relations to both parents had never been changed and, as the decree of divorce made no provision for the child, the court had jurisdiction to compel the father to contribute to his support.

Moreover, public policy should not allow either parent, able to support a minor child, to avoid this duty when the alternative is to make the child a charge upon the public.