B. E. EDMONDSON, NEXT FRIEND OF FRANCIS LEIGH, ANNIE BLANCHE LEIGH, HOMER LEIGH, AND JULIAN LEIGH, INFANT CHILDREN OF EFFIE EDMONDSON LEIGH AND HER HUSBAND, GEORGE LEIGH (DECEASED); H. D. HARDISON, NEXT FRIEND OF BERTHA LEIGH THIGPEN AND JOHN LEIGH, INFANT CHILDREN OF COLUMBUS LEIGH, (DECEASED); H. D. HARDISON, NEXT FRIEND OF MARTHA LEIGH AND THOMAS HENRY LEIGH, INFANT CHILDREN OF CALVIN LEIGH, (DECEASED), v. WILLIAM G. W. LEIGH, TURNER LEIGH, MARY JOHNSTON AND HUSBAND, SAMUEL JOHNSTON; MARION LEIGH, WILLIAM ANN HATHAWAY, MARTHA WILLIAMS AND HUSBAND, DAVID WILLIAMS; JENNIE BELL LEIGH, AND EFFIE LEIGH.

(Filed 25 February, 1925.)

1. Wills — Estates — Contingent Remainders — "Issue" — "Children"—
Statutes.

The intent of the testator, as gathered from the language of his will, construed as a whole, will control its interpretation, and he may so use the word "issue," in a devise of lands, in connection with the word "children," etc., as to mean lineal descendants.

**2. Same—Partition.**

A devise of lands to testator's two sons for life, if either should die without issue the lands to go to the whole of their children—that is, one-half to the children of each—according to the law of the land: *Held,* upon the happening of the contingency, the children of the two sons, the grandchildren of the testator, will take the lands so devised, and the grandchildren of the first takers were not excluded under the terms of the devise; and *held, further,* a partition of the lands between the first takers, the testator's two sons, could only affect their own life estate.

APPEAL by defendants from *Devin, J.,* at October Term, 1924, of EDGECOMBE.

William C. Leigh died in Edgecombe County leaving a last will and testament dated 6 November, 1854. The will was duly probated in 1855 and is recorded in the office of the clerk of the Superior Court of said county in Will Book G, pages 103 *et seq.* Items 6 and 8 of said last will and testament are the only items thereof which are pertinent to this controversy, and said items 6 and 8 are in words and figures as follows:

"Item 6. I lend unto my two sons, Francis M. Leigh and William G. W. Leigh, during their natural lives, one tract of land called the Scott land and one tract of land called the Cherry land, and one tract called the Temperance Pippin land, reserving 30 square yards around the graveyard as the deeds will more fully show, and the tract whereon I now live, after the death of my wife Lucy Leigh, reserving 30 square yards around the graveyard, and the Brown tract after the death or widowhood of my wife Lucy Leigh as the deed will show, and the tract I purchased from Christopher Harrell, and if Francis or William should either of them die without issue, then the other one is to take all the land above described and in the same manner as is loaned to both of them, or, if either Francis or William should die leaving a widow for her to be entitled to a dower of one-third in value of one-half of said land, and provided Francis and William should die leaving children, I give and bequeath all of said land to the whole of their children, that is, one-half of said land to the children of each, according to the laws of the State, and if Francis or William should either of them die without children, then, I lend the whole of said land to the other for life, and then, I give and bequeath the said land to his children; and if both Francis and William should die without children then I give the whole of said land to the children of John H. Leigh and Temperance Harrell, one-half to John's children, and the other half to Temperance's children, and if John should die leaving no children then I give the whole of the land to the children of Temperance Harrell."

"Item 8. It is my will and desire that my executors shall have 3 years to settle my estate, and shall have the right to rent out all my lands that I have not loaned to my wife Lucy Leigh, and if my estate shall be destitute of funds to pay all my just debts and legacies, that I have given away, and any of my estate shall have to be sold to pay the remaining parts of my debts and legacies after using all the funds on hand, it is my will and desire that my tract called the Temperance Pippin land shall be sold up to the post oak near the road, then south through the Josey Pond to Jesse Stancill's line, and if there should be any money remaining after paying all my just debts and legacies I give and bequeath all the balance of the money to my two sons, that is, Francis M. Leigh and William G. W. Leigh, to them and their heirs forever."

At the death of William C. Leigh, he was seized in fee and possessed of all the land described in the above items of his will.

Francis M. Leigh and William G. W. Leigh had a partition of the land set forth in item 6 of their father's will. The two sons were the sole parties to the partition proceeding, which was by order of court and recorded in the office of the register of deeds of Edgecombe County, Book 28, p. 161. The land set forth in item 8 was sold by the executors to one Lawrence Bunting and deed duly made and recorded in office of register of deeds of Edgecombe County, Book 28, p. 628.

Lucy Leigh, wife of William C. Leigh, is long since dead. Francis M. Leigh, son of testator and mentioned in items 6 and 8 of said last will and testament, died on the ..... day of January, 1923; that the wife of Francis M. Leigh predeceased him many years, and the said Francis M. Leigh never remarried.

There were born of the marriage between said Francis M. Leigh and his wife the following children, to wit, George Leigh, Columbus Leigh, Marion Leigh, Mary Leigh Johnston, Turner Leigh, Martha Leigh Johnston, Effie Leigh, Calvin Leigh and William Ann Hathaway.

George Leigh, one of the children above mentioned, intermarried with Effie Edmondson, and died ........ April, 1917, and prior to the death of his father, Francis M. Leigh. George Leigh left him surviving his widow, Effie Edmondson, and the four following children, to wit, Francis Leigh, Annie Blanche Leigh, Homer Leigh and Julian Leigh.

Columbus Leigh, one of the children of Francis M. Leigh, above mentioned, died some 7 or 8 years prior to the death of Francis M. Leigh, his father, leaving him surviving his widow, Jennie Bell Leigh, and the two following children, to wit, Bertha Leigh Thigpen and John Leigh.

Calvin Leigh, one of the children of Francis M. Leigh, above mentioned, died several years prior to the death of Francis M. Leigh, his

father, leaving him surviving his widow, Effie Leigh, and two following children, to wit, Martha Leigh and Thomas Leigh.

All the children of George Leigh, Columbus Leigh and Calvin Leigh are infants, under the age of 21 years and are parties plaintiff to this action and are represented by duly appointed next friends.

The remaining children of Francis M. Leigh, son of testator, are now living and are all *sui juris* and parties to this action.

William G. W. Leigh, son of testator, and brother of Francis M. Leigh, deceased, is now living and is, and has been in possession of the tracts of land allotted to him in the partition proceedings aforementioned had between him and his brother, Francis M. Leigh, deceased.

Marion Leigh, Mary Leigh Johnston, Turner Leigh, Martha Leigh Williams, Effie Leigh and William Ann Hathaway, the living children of William C. Leigh, testator, are now, and have been since the death of their father, in possession of the land allotted to said Francis M. Leigh, deceased, in the partition proceedings aforementioned.

It is contended by plaintiffs that Francis Leigh, Annie Blanche Leigh, Homer Leigh and Julian Leigh, infant children of George Leigh, deceased, are together entitled to an undivided one-eighteenth interest in all of the land set out and described in item 6 of the last will and testament of William C. Leigh, deceased.

That Bertha Leigh Thigpen and John Leigh, infant children of Columbus Leigh, are together entitled to a one-eighteenth undivided interest in said lands.

That Martha Leigh and Thos. Henry Leigh, infant children of Calvin Leigh, are together entitled to a one-eighteenth undivided interest in said lands.

Defendants demur to plaintiffs' action on the following grounds:

"For that under the terms and conditions of the will of William C. Leigh, the children of George Leigh, Calvin Leigh, and Columbus Leigh, the plaintiffs herein, are not devisees of said Leigh and have no interest in the lands devised by him, and take nothing under his will. And for that the complaint does not state a cause of action.

"For that the complaint does not allege and show that the children of the said George Leigh, Calvin Leigh, and Columbus Leigh are not barred by the partition of said lands between Francis. M. Leigh and W. G. W. Leigh, the first takers."

The court below rendered judgment, in part, as follows: "It is further ordered, adjudged and decreed that Francis Leigh, Annie Blanche Leigh, Homer Leigh and Julian Leigh, infant children of Effie Edmondson Leigh and her husband George Leigh, deceased, are the owners of an undivided one-eighteenth interest in the lands described and mentioned in item 6 of the last will and testament of William C.

Leigh, deceased, except that portion of said lands described in item 8 of said last will and testament which portion was sold by the executors of the estate of William C. Leigh, testator; that Bertha Leigh Thigpen and John Leigh, infant children of Columbus Leigh, deceased, are the owners of an undivided one-eighteenth interest in said lands; and that Martha Leigh and Thos. Henry Leigh, infant children of Calvin Leigh, deceased, are the owners of an undivided one-eighteenth interest in said lands."

The defendants duly excepted to the judgment and assigned error and appealed to the Supreme Court.

*H. H. Phillips for plaintiffs.*
*John L. Bridgers and Gilliam & Bond for defendants.*

CLARKSON, J.   The two questions presented in this appeal are:
(1) Do the words "issue," "the whole of their children, . . . according to the laws of this State," and "children," used in the testator's will, include and embrace testator's great-grandchildren (the children of children who died prior to the first life takers)?

(2) Was the partition had between Francis M. Leigh and William G. W. Leigh (the two life tenants) binding upon the remaindermen who were entitled to the land and the possession thereof upon the death of the life tenants, or either of them?

It is settled law in this State that the intent of the testator, as expressed by the terms and language of the entire will, must be given effect unless in violation of law. "Every tub stands upon its own bottom," except as to the meaning of words and phrases of a settled legal purport. A will must be construed "taking it by its four corners." *Patterson v. McCormick,* 181 N. C., p. 313; *Smith v. Creech,* 186 N. C., p. 190; *Wells v. Williams,* 187 N. C., p. 138.

The defendants rely strongly on *Lee v. Baird,* 132 N. C., p. 755. In that case, *Mr. Justice H. G. Connor,* says: "Certainly the use of the words 'all my children' by the testatrix is free from ambiguity and the uniform current of authority in this and other courts sustains the proposition that they will not be construed to include grandchildren unless from necessity, which occurs when the will would be inoperative unless the sense of the word 'children' were extended beyond its natural import and when the testator has clearly shown by other words that he did not use the term 'children' in the ordinary actual meaning of the word but in a more extensive sense; that this construction can only arise from a clear intention or necessary implication, as where there are no children but are grandchildren, or where the term children is further explained by a limitation over in default of issue."

In the *Baird will case, supra,* the testatrix, Mrs. Baird, when she made the will had seven living children and six living grandchildren—children of a deceased daughter, Mrs. Lee. She also had numerous other grandchildren, children of living children. The deceased daughter, Mrs. Lee, had married a man of wealth and she had received large sums by way of advancements. Other pertinent facts appear in the will showing an intent as to the meaning of "all my children." The main clause in the Baird will relied on, is as follows: "I bequeath to my daughter, Vickie Baird, all my household and kitchen furniture, to be hers forever, and I bequeath to Vickie during her life time my Forest Hill property; and at her death to be sold and divided equally among all my children."

The setting of the parties and the language in the Baird will are different from the instant case. In item 6, William C. Leigh, the testator, uses these words: "If Francis or William should either of them *die without issue* . . . I give and bequeath all of my said land *to the whole of their children,* that is, one-half of said land to the children of each, *according to the laws of this State,*" etc. After that he uses the word "children" many times, but in the latter part of item 8 of the will he says, in regard to the balance after the sale of certain land for the payment of debts and legacies by his executors, "I give and bequeath to my two sons, that is, Francis M. Leigh and William G. W. Leigh, *to them and their heirs forever.*"

It will be noted that the testator used the words "die without issue" referring to the first takers—those who have a life estate. The usual acceptance of the word "issue" is "an indefinite succession of lineal descendants who are to take by inheritance, and hence heirs of the body." (*Harrell v. Hagan,* 147 N. C., 116.) He qualifies the word "children" by saying, *"the whole of their children* . . . *according to the laws of this State."* The law in regard to descent, C. S., 1654, Rule 3, is as follows:

"Lineal descendant represents ancestor. The lineal descendant of any person deceased shall represent their ancestor, and stand in the same place as the person himself would have done had he been living."

"The word 'issue' is usually construed to mean more than children.

"In real law. Descendants. All persons who have descended from a common ancestor. 3 Ves., 257; 17 Ves., 481; 19 Ves., 547; 1 Rop. Leg., 90. In this sense, the word includes not only a child or children, but all other descendants in whatever degree; and it is so construed generally in deeds. But, when used in wills, it is, of course, subject to the rule of construction that the intention of the testator, as ascertained from the will, is to have effect, rather than the technical meaning of the language used by him; and hence, issue may, in such a connection, be

restricted to children, or to descendants living at the death of the testator, where such an intention clearly appears. Abbott." Black's Law Dictionary, p. 658. *Harrell v. Hagan, supra; Fillyaw v. Van Lear,* 188 N. C., 772.

Taking the words "issue," "the whole of their children  . . . according to the laws of this State,"—after the executors were given power to sell certain land to pay debts and legacies, "the balance of the money to my two sons, that is Francis M. Leigh and William G. W. Leigh, to them and their heirs forever,"—it seems that by clear intention or necessary implication the grandchildren of the first takers would be entitled to their parent's share.

The fact that in subsequent portions of item 6 of the will "children" is used, we think the word "children" is taken as qualified by the word "issue" and "according to the laws of this State."

In *Carroll v. Herring,* 180 N. C., p. 372, it is said: "The law, also, if possible, adopts the just, natural and reasonable rule of an equal distribution among children (40 Cyc., 1411), and if words are used in one part of a will in a certain sense, the same meaning is to be given them when repeated in other parts of the will, unless a contrary intent appears. It is a well settled rule of testamentary construction that if it is apparent that in one use of a word or phrase a particular significance is attached thereto by the testator, the same meaning will be presumed to be intended in all other instances of the use by him of the same word or phrase. *Taylor v. Taylor,* 174 N. C., 537."

Courts look to the will as a whole to discover testator's intention. We think from reasonable, just and righteous interpretation of the entire will, the testator did not intend to exclude grandchildren of the first takers, and the holding of the court below was correct. We do not think the partition between the two sons, life tenants, binding on any one except themselves during their lifetime. This is so clear we do not think it necessary to discuss it.

The judgment below is
Affirmed.