(No. 20742.—

JESSIE B. MOFFET *et al.* Appellants, *vs.* MALCOLM WEBSTER CASH *et al.* Appellees.

*Opinion filed October 23, 1931—Rehearing denied Dec. 16, 1931.*

STONE, C. J., and ORR, J., dissenting.

F. C. WINKLER, CRAIG & CRAIG, and JOHN H. CHADWICK, for appellants.

. Joseph H. Barnhart, and Jones, McIntire & Jones, for appellees.

Mr. Justice Duncan delivered the opinion of the court:

Appellants, heirs-at-law of Lafayette S. Cash, deceased, filed a bill in the circuit court of Coles county, and later a supplemental bill, for the construction of the last will and testament of the decedent, making appellees, Malcolm Webster Cash, and John Rutherford, Sr., executor of the will, defendants. An answer was filed by Malcolm W. Cash, to which appellants filed a replication. After a hearing the court entered a decree construing the will in accordance with the contention of Malcolm W. Cash as set forth by him in his answer to the bill. Appellants have appealed from that decree to this court.

Lafayette S. Cash died March 31, 1897, leaving a will which was executed on March 2, 1897, and which was after his death duly admitted to probate in the county court of Coles county. By the first paragraph of the will he made provision for his widow. By the second paragraph he devised certain lands to his daughter Ella M. Valodin, "to have and to hold the same during her life and at her death the same to descend to her children the issue of her body share and share alike." By the third paragraph he devised certain land to his daughter Lula R. Timmons, "to have and to hold the same during her life and at her death the same to descend to her children the issue of her body share and share alike." By the fourth paragraph he devised certain land to his son Logan S. Cash, "to have and to hold the same so long as he may live and at his death the same to descend to his children." By the fifth paragraph he devised certain land to his daughter Jessie B. Cash, "to have and to hold the same so long as she may live and at her death the same to descend to her children the issue of her body." By the sixth paragraph he devised 280 acres of land in Coles county, the title to which is in dispute in

this case, to his son H. Paul Cash, "to have and to hold the same so long as he may live and at his death the same to descend to his children." The seventh paragraph of the will is as follows: "That in order that there may be no contention as to my intention in making the foregoing bequests to my said sons and daughters I hereby declare that each of my said legatees are to take a life estate only in the lands so given to each of them with a remainder over to vest in the children of each as heirs or the children of such children should there be any to take the title when the life estate is terminated. Should any or either of my sons or daughters die without leaving any children or the children of such children to take the title to such real estate then and in that case the real estate so devised to such son or daughter to descend to my heirs share and share alike according to the laws of descent of the State of Illinois."

All of the facts were stipulated by the parties. At his death the testator left surviving him his widow, Susan A. Cash, and five children, namely, Jessie B. Moffet, Ella M. Valodin, Lula R. Timmons, H. Paul Cash and Logan S. Cash. After the death of the testator Logan S. Cash died leaving three children, viz., Howard, Susan and Ruby Cash. H. Paul Cash died April 1, 1930, and left surviving him his widow but no child or descendants of children born to him. He at no time had a child born to him. On February 17, 1923, he and his wife duly and legally adopted as their son the appellee Malcolm W. Cash, who was no blood relation of H. Paul Cash. He was born on August 17, 1902, and from the time he was seven years of age lived with H. Paul Cash and his wife as a member of their family. Before his adoption his name was Malcolm Webster. After his adoption, by provisions of the order of court by which he was adopted, his name was changed to Malcolm Webster Cash, and by the latter name he has been known since his adoption. After the original bill had been filed the testator's widow died and a supplemental bill

was filed setting up that fact. There was a misdescription of forty acres of the land devised by the sixth paragraph of the will to H. Paul Cash for his life, the description in the will being the northeast quarter of the northwest quarter of section 10, in township 14 north, range 14 west of the second principal meridian, and the one intended by the testator was the northeast quarter of the southwest quarter of section 10 in said township and range. Appellants were on April 1, 1930, after the death of H. Paul Cash, the heirs-at-law of the testator according to the law of descent of this State. Malcolm W. Cash by his answer to the bill of complaint claimed that he was under the will of the testator the owner of the land devised in the sixth clause of the will and was entitled to all the rents during the time appellants had been in possession thereof. Appellants contended that they, as the heirs of the testator, were and are the legal owners of the lands so willed to H. Paul Cash according to the provisions of the testator's will. It was stipulated and agreed that the case was to be considered and decided the same as if a cross-bill asking affirmative relief had been filed by Malcolm W. Cash. The circuit court construed the will in accordance with the contention of Malcolm W. Cash, and found that he, as the adopted son of H. Paul Cash, was included in the meaning of the word "children" as used in the sixth paragraph of the will, and decreed that he was the owner of the land which was devised by the sixth paragraph of the testator's will.

It is the contention of appellants that the circuit court misconstrued the will; that it was not the intention of the testator to include an adopted child in the meaning of the word "children" as used in the sixth paragraph of the will; that Malcolm W. Cash has no interest in the land devised by that paragraph of the will, and that they (appellants) are, as heirs-at-law of the testator, under the provisions of the seventh paragraph of the will, the owners of the real estate in question. The contentions of Malcolm W.

Cash and the appellants are the only questions for decision in this case.

As in all cases where the construction of a will is involved, the decision in this case depends upon a determination of the intention of the testator from the language used in the will, considered in the light of the circumstances existing at the time of its execution and at the death of the testator. (*Munie* v. *Gruenewald,* 289 id. 468; *Wallace* v. *Noland,* 246 id. 535; *Whitcomb* v. *Rodman,* 156 id. 116.) In *Butterfield* v. *Sawyer,* 187 Ill. 598, land was deeded to Adeline Butterfield for her life with remainder to her child or children, and in default of a child or children, to her heirs generally. She died without having had a child born to her but did adopt a child that survived her. It was held that the adopted child was within the meaning of the words "heirs generally" as used in the deed and as the heir of Adeline Butterfield took the land at her death. In *Wallace* v. *Noland, supra,* the testator devised land to one of his sons, with a provision that should the son die having no heirs then the property should go to three other children of the testator. The son never had a child born to him but after the death of the testator he adopted a child. The word "heirs," as used in the will, was construed to mean "children," and the question was whether the adopted child was included in the meaning of the word "heirs" as so construed. It was held that the adopted child did not take the property under the will because at the time the will was made there was no statute of adoption in Illinois, and it could not be supposed that the possibility of his son adopting a child was within the testator's reasonable contemplation at the time of the execution of the will. In *Munie* v. *Gruenewald, supra,* the testator devised property to his wife for her life and at her death to be divided among the testator's children, with a provision that should any child die before the death of the testator or before the death of his widow "the share that would fall to such child is to go

to his children." Before the will was executed the testator's daughter, Paulina, and her husband, adopted a child, which the testator always treated in the same manner that he treated his grandchildren. Paulina having died before the testator's widow, it was held that at the death of the widow the adopted child took an interest in the property because the testator's conduct toward the adopted child prior to his death showed that his intention was to include such child in the word "children" as used in the will. Having noted that there were cases in other jurisdictions holding that the word "children" in a will should not be construed to include an adopted child, it was said the holding of such cases was based on the fact that the testator could not have intended the adopted child to be included, either because the child was not adopted until after the testator's death or after the making of the will.

Appellee Malcolm W. Cash points out that section 5 of the Adoption act provides that an adopted child shall be deemed, for the purposes of inheritance by such child and other legal consequences and incidents of the natural relation of parents and children, the child of the adopting parents the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the adopting parents, or property from lineal or collateral kindred of such parents, by right of representation. He cites the cases of *Flannigan* v. *Howard,* 200 Ill. 396, and *Hopkins* v. *Gifford,* 309 id. 363, which hold that where a child is adopted after a will has been made by the adopting parent such child has the same rights as a natural child under section 10 of the Statute of Descent, which provides for the abatement of devises and legacies where an after-born child is not mentioned in the will and no intention to disinherit appears. *Ryan* v. *Foreman,* 262 Ill. 175, and *McNamara* v. *McNamara,* 303 id. 191, are also cited and relied upon by him. In the *Ryan case* it was held that an adopted child of a

policeman has the same rights in a pension fund under the Police Pension Fund act as a natural child. In the *Mc-Namara case* it was held that an illegitimate child made legitimate by adoption in California is regarded in Illinois as the heir of the adopting parent. None of these cases are controlling here. The rights of inheritance of Malcolm W. Cash are not involved in the case. He claims nothing by inheritance but his claim is based on the provisions of the will, and, as we have stated, the question is one of the intention of the testator.

It should be noted that in the second, third and fifth paragraphs of the will in this case the testator devised certain real estate to each of his three daughters for their respective lives, with remainder in each instance to the daughter's children the issue of her body. In making the devises to his sons in the fourth and sixth paragraphs the remainder in each case after the son's death was to the son's children, without any statement that the children should be the issue of the son's body. When the second, third, fourth, fifth and sixth paragraphs of the will are considered alone it might seem that the testator intended that only natural children of the daughters should take after their death but that he intended to make no such restriction in the case of lands devised to his sons for their lives but intended that their adopted children might take under the will. That such a distinction was not intended by the testator, however, appears from the seventh paragraph of the will, where the testator stated that each son and daughter should take a life estate, only, in the property devised to him or her, with remainder to his or her children or the children of such children, and that if any son or daughter died without having any children, or children of children, then the real estate devised to such son or daughter should go to the testator's heirs according to the law of descent. The seventh paragraph clearly shows that the testator intended to make no distinction between the kind of children that could

take after the life estate of a daughter and the kind of children that could take after the life estate of a son. He had clearly expressed his intention that only natural children should after her death take the property devised to a daughter, and it would therefore appear that it was his intention that only natural children of a son should after the son's death take the property in which the son had a life estate. That the limitation over after the death of a daughter is to the issue of her body while the limitation over after the death of a son is merely to his children may be explained by the fact that one not versed in legal phraseology might not conceive of a child being called the issue of the body of a man while such expression would seem very natural in referring to children of a woman.

Malcolm W. Cash was not born until five years after the death of the testator and was not adopted by H. Paul Cash until nearly twenty-six years after the testator's death. We find that neither the language of the will nor the circumstances surrounding the testator at the time the will was executed show that his intention was to include an adopted child in the meaning of the word "children" as used in the sixth and seventh paragraphs of the will. It follows that Malcolm W. Cash is not, as the circuit court decreed, the owner of the land devised by the sixth paragraph of the will. Since H. Paul Cash at his death left surviving him no child or children within the meaning of the will, and no grandchildren, the lands described in the sixth paragraph of the will at his death became the property of appellants by the provisions of the seventh paragraph of the will.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

STONE, C. J., and ORR, J., dissenting.—See p. 311.