## Sanders et al. v. Adams et al.

April 25, 1939.

HENRY JACKSON and H. CLAY KAUFFMAN for appellants.
J. E. ROBINSON for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal involves the construction of paragraph seven of the duly probated will of L. R. Schooler, who died in 1887 a resident of Garrard county, Kentucky, when same is considered in connection with the will of his daughter (one of his devisees), Martha (Mattie) Schooler Route, by which she attempted to will the property devised her, with limitation over, by her father to the appellants, her children by legal adoption.

Testator by his will devised his home farm in Garrard county of a hundred and seven acres to his wife for life, together with certain personal property. He also bequeathed her the interest upon some eighteen shares of bank stock, with certain limitations named, which are not here material.

By the second paragraph of his will, he provided that upon the death of his wife, his two daughters, Maggie and Lizzie Adams, were each to receive one-half of the 107 acres home farm for their special use and benefit, with the limitation that upon the death of each, their respective one-half interest in the land given them should go to the children of each respectively.

Paragraph five of the will provided that each of testator's two daughters, Maggie and Lizzie Adams, should (after the death of his wife) have the interest on eight shares of the bank stock for their separate use and benefit and that upon their respective deaths, the stock should go to the children of each.

By the seventh paragraph of his will, with the construction of which we are here mainly concerned, the testator devised to a third daughter, Martha (Mattie) E. Schooler, his "Collier farm" of two tracts, containing respectively some eighty-seven acres and sixteen acres, more or less, of "flat woods land" for her special use and benefit, with the limitation that "if Martha should have children, (the lands are) to go to them after her death" and "if Martha should die without children, then the lands so devised to Mattie shall be equally divided between my daughters, Maggie Adams and Lizzie Adams, trusteed to them as their lands were as above mentioned." Also by this seventh paragraph he devised his daughter Martha, "the interest on two shares of my bank stock * * * after the death of my wife * * * in the same manner that the bank stock is devised to my two daughters, Maggie Adams and Lizzie Adams, in this will."

It further appears that this daughter and devisee of the testator, Martha E. Schooler, did, some years afterwards, marry one J. B. Route and that, having no children born to them as the issue of their marriage, they on March 21, 1896, by a proceeding duly had, adopted the appellant, Dora Route Sanders, whose name at the time of adoption was Dora Elrod, and in May, 1897, also duly adopted the appellant, James Route, whose name at the time of his adoption was James Elrod.

Further it appears that on March 14, 1916, the adoptive mother, Martha Route, her husband having predeceased her and her adopted daughter, Dora Route, having married one Henry Sanders, executed her last

will, oy which she devised her lands (consisting of the sixteen and eighty-seven acre tracts willed her upon the limitation stated by her father, L. R. Schooler) to her adopted children, James Route and Dora Route Sanders, to be equally divided between them.

This will was upon her death duly probated as her last will in the Garrard county court.

Following the probate of the will, the appellees, Maggie and Lizzie Adams, filed this suit in equity (under the provisions of Section 11, Kentucky Statutes) in the Garrard circuit court on November 12, 1937, against Dora Sanders, her husband, Henry Sanders, and James Route.

The petition alleged that the named defendants were casting a cloud upon the title of plaintiffs in the lands in controversy and asked that they be adjudged to be the owners of the lands and the holders of the fee simple title thereto.

The petition set out further that the plaintiffs, Maggie and Lizzie Adams, are the daughters and devisees of L. R. Schooler, deceased, who made his last will, which was duly probated, in June, 1887, and which was still in full force and effect; that the said testator had another daughter, Martha E. Schooler, to whom, by his will, he gave the two tracts of land referred to in the petition for and during her natural life and the interest on the two shares of bank stock; that the will devising Martha the lands here involved further provided that ''if Martha should have children, (the lands are) to go to them after her death'' and ''if Martha should die without children, then the lands so devised to Mattie shall be equally divided between my daughters, Maggie Adams, and Lizzie Adams;'' that their sister, Martha Schooler, married J. B. Route; that she never had any children and her husband died before she did.

The defendants (here appellants), Dora Sanders, her husband, Henry Sanders, and James Route, answered, admitting that their adoptive mother, Martha E. Schooler Route, never had any natural children, but that she and her husband had legally adopted the two appellants, Dora Sanders and James Route, as their children, and set out that their adoptive mother, Martha Route, had left a will, which was duly probated follow-

ing her death in 1937, by the provisions of which she devised the land in question, absolutely and equally, to the appellants, her adopted children.

Further they claim that by reason of their legal adoption by their adoptive mother, under the provisions of Section 2071, Kentucky Statutes, they thereby took the legal status of children born to the said Martha Schooler Route and were given, by their adoption, in law and in fact, the same rights as if they had been born the natural children of their said adoptive mother and father, and were entitled to take the property devised them by their mother, as her children within the meaning of the limitation of paragraph 7 of the Schooler will.

Further they pleaded that the adoption law, Section 2071, Kentucky Statutes, was the same as was in effect at the time L. R. Schooler executed his will and that the will of L. R. Schooler was made in view of and he was legally charged with knowledge of this said general statute law of the state, and in their answer they prayed that the court adjudge them to have such status and rights given them under the provisions of the said statute and the will of their mother, as having died, leaving "children"—to whom it should go.

A general demurrer was filed by the plaintiffs to the answer and the cause being submitted thereon, the court sustained the demurrer. Whereupon, the defendants failing and refusing to plead further, the court adjudged the two tracts of land and the two shares of bank stock to belong to the plaintiffs and, further, that the appellants, the two adopted children of Martha Schooler Route, though legally adopted, were not the children of Martha Schooler Route in the meaning, purpose and intention of the will of L. R. Schooler.

Excepting to and complaining of this judgment, Dora Sanders and James Route, the adopted children of Martha Schooler Route, have appealed and are now before this court, asking that they be given the status of children born to Martha Schooler Route, as the term was used and applied in the will of L. R. Schooler.

The appellants, as the adopted children of Martha Schooler Route, base their claim to the lands and bank stock devised them on their interpretation of the word "children" as used in the L. R. Schooler will. They

contend that the judgment of the learned trial court was erroneous, because, they, by their adoption, became the "children" of Martha Schooler, consistent with the meaning, purpose and intent of the will of L. R. Schooler, and that they are the children of Martha Schooler Route.

Clause seven of the will of L. R. Schooler very significantly expresses his intent, in making the devise in question to his daughter, Martha, in the following language:

> "If Martha should have children, (the lands are) to go to them after her death" and "if Martha should die without children, then the lands so devised to Mattie shall be equally divided between my daughters, Maggie Adams and Lizzie Adams."

Much the same question was before this court in the case of Merritt v. Morton et al., 143 Ky. 133, 136 S. W. 133, 134, 33 L. R. A., N. S., 139.

There the facts were that W. W. Merritt and wife entered into a contract of adoption with the Louisville Baptist Orphans' Home, whereby they adopted the infant, Charles Buel Davis. After the execution of this adoption contract, Merritt and wife reared the child as their own until he reached his majority. They never had any children born to them. Carrie Merritt, the foster mother of Charles, died intestate prior to 1910. In 1910 Sarah E. Morton, the mother of Carrie Merritt, died intestate, possessed of a considerable estate.

The adopted child, claiming that he was entitled to share in the estate of Sarah E. Morton to the extent his foster mother would have shared had she been living at the time of her mother's death, brought that suit to recover such interest in Sarah E. Morton's estate.

The chancellor was of the opinion that he could not inherit from any kindred of his foster or adoptive parents and dismissed the petition.

Upon appeal from that judgment, we said, in affirming the judgment of the chancellor, that:

> "The act of the foster parents in adopting the child is a contract into which they entered with those having the lawful custody of the child, an agreement personal to themselves, and, while they have a perfect right to bind or obligate themselves to make

the child their heir, they are powerless to extend this right on his part to inherit from others. All inheritance laws are based or built upon natural ties of blood relationship, whereas an adopted child's right to inherit rests upon a contract, and hence only those parties to the contract are bound by it.''

In the later case of Lanferman et al. v. Vanzile, 150 Ky. 751, 150 S. W. 1008, 1010, Ann. Cas. 1914D, 563, in referring to and approving the holding in the Merritt case, we said:

"In Merritt v. Morton * * * we held that an adopted child did not inherit from the mother of his foster mother; the ruling being based upon the ground that the statute makes the person adopted capable of inheriting from the person adopting him as if he were his natural child, but does not make him capable of inheriting from other persons. This ruling seems to be in accord with authorities everywhere.''

This legal principle, regulating the adopted child's right of inheritance by reason of its contractual or statutory adoption, is thus stated in Re Brenner's Estate, 149 Misc. 412, 267 N. Y. S. 765, 766:

"The rule is that an adopted child inherits from his foster parents, but not through them. An adopting parent, under the law, takes the adopted child as one of his prospective next of kin. The foster parent cannot fasten the adopted child, for inheritance purposes, upon his relations.''

The two expressions contained in paragraph 7 of the will, as set out supra, covering the property devised by testator to his daughter, Martha, seem to us to have very clearly evidenced testator's intention to give his daughter a life interest in the property, with remainder over to any children she might have and, if she should have no children, that the property was to be divided at her death between his other two daughters, Maggie and Lizzie Adams or amongst his own blood relations.

As argued by appellees, it could hardly be contended that, if Martha Schooler Route had not adopted the appellants in this case and died without children of her own, a serious question could be raised on the subject of whether the appellees would have become vested

with a fee simple title to the lands. That being true, they ask, Could the daughter, Martha Schooler Route, who died without having issue, by the artificial method of the statutory adoption of children, destroy and defeat the intention set out in L. R. Schooler's will? They argue that she could not, for the reason, as stated in the Merritt case, that "the act of the foster parents in adopting the child is a contract into which they entered with those having the lawful custody of the child, an agreement personal to themselves, and, while they have a perfect right to bind or obligate themselves to make the child their heirs, they are powerless to extend this right on his part to inherit from others."

It is our conclusion, in accord with the ruling in the Merritt case, that the fact of Martha Schooler Route's adoption of these two children, while effective to make them her own heirs with the right to inherit from her, was ineffective to extend to the adopted children the right to inherit through her, from others who were not parties to the contract of adoption.

In accord with and supporting our conclusion as to this, see 2 C. J. S., Adoption of Children, section 63(d), page 455, in which it is stated that the rule above announced is based upon the principle "that a stranger to the adoption proceedings who has never recognized the existence of the artificial relation created thereby should not have his property diverted from the natural course of descent without a clear expression of such intent," citing in support of the text Grimes v. Grimes, 207 N. C. 778, 178 S. E. 573, and Brooks Bank & Trust Co. v. Rorabacher, 118 Conn. 202, 171 A. 655.

Such being our views and the ruling of the learned chancellor being in harmony therewith, we are of the opinion that his judgment should be and it is affirmed.