LINDSAY BRADFORD, TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF JOHN M. W. HICKS, DECEASED, v. MARGARET WELLS JOHNSON, EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF JOHN HICKS JOHNSON, DECEASED; MARGARET JOHNSON, A MINOR; BERTHA LEIGH JOHNSON, A MINOR; JOHN HICKS JOHNSON, JR., A MINOR; FRANK PAGE HICKS, WILLIAM L. WYATT, WILLIAM L. WYATT, JR., EDGAR MARSHALL WYATT, ANNIE CATHERINE WYATT, FRANCES WYATT NIPPER; WILLIAM L. WYATT, III; A MINOR; DIANNE HOUSTON WYATT, A MINOR; EMILY HUGHES WYATT, A MINOR; VINCENT CHARLES DICKENSON WYATT, A MINOR; EDGAR MARSHALL WYATT, JR., A MINOR; ROBERT J. WYATT, MARY EUGENIA WYATT THOMAS, ROBERT J. WYATT, JR., EDITH WYATT NEWBOLD; GENIE CHRISTIAN THOMAS, A MINOR; ROBERT J. WYATT, III, A MINOR; HOWARD LYON WYATT, A MINOR; ROBERTA NEWBOLD, A MINOR; ARCH NEWBOLD, JR., A MINOR; LOUISE WYATT NORRIS, MARY NORRIS COOPER, LOUISE NORRIS RAND, MARION NORRIS GRABAREK; CARL LLOYD COOPER, A MINOR; DORIS COOPER, A MINOR; MARGARET LOUISE RAND, A MINOR; EDWARD NORRIS RAND, A MINOR; R. W. GRABAREK, JR., A MINOR; LOUISE NORRIS GRABAREK, A MINOR; ETHEL HICKS WELDON, ELIZABETH WELDON SLY, MARGARET B. WELDON JONES, NATHANIEL WELDON, JR.; JOHN E. SLY, JR., A MINOR; WARREN FREDERICK SLY, A MINOR; MARGARET ELIZABETH JONES, A MINOR; FRANCES HICKS GARRETT, BERTHA GARRETT ENTWISTLE, FRANCES REID GARRETT; GLENDA T. GARRETT, A MINOR; BERTHA HICKS WILLIAMSON, WILLIAM V. WILLIAMSON, JR.; HARRISON H. WILLIAMSON, A MINOR; FRANCES H. WILLIAMSON, A MINOR; SARA NEAL WILLIAMSON, A MINOR; MINNIE HICKS WILLIAMS; RALPH W. WILLIAMS, JR., A MINOR; JUDITH LEGRANDE WILLIAMS, A MINOR; CHARNER M. WILLIAMS, A MINOR; JULIA HICKS ADE; SANDRA W. ADE, A MINOR; RAYMOND ADE, JR., A MINOR; WILLIAM B. HICKS ADE, A MINOR; JOHN HICKS ADE, A MINOR; TIMOTHY QUENTIN ADE, A MINOR; JULIA LOUISE ADE, A MINOR; MARY JOHNSON HART; ELIZABETH HICKS HART. A MINOR; JULIA DRANE HART, A MINOR; JULIAN DERYL HART, JR., A MINOR; JOHN MARTIN HART, A MINOR; WILLIAM HART, A MINOR;

MARGARET LOUISE HART, A MINOR; MARGARET LOUISE JOHN-
SON, MARION F. WYATT, MARION F. WYATT, JR.; BARBARA ANN
WYATT, A MINOR; MARION F. WYATT, III, A MINOR; JIMMIE J.
WYATT, A MINOR; MARY RENNIE NEWBOLD, A MINOR; BERTHA
HICKS TURNER; THE UNBORN ISSUE OR LINEAL DESCENDANTS OF THE
BLOOD OF JOHN HICKS JOHNSON, FRANK PAGE HICKS, WILLIAM
L. WYATT, ROBERT J. WYATT, LOUISE WYATT NORRIS, ETHEL
HICKS WELDON, FRANCES HICKS GARRETT, BERTHA HICKS
WILLIAMSON, MINNIE HICKS WILLIAMS, JULIA HICKS ADE,
MARY JOHNSON HART, MARGARET LOUISE JOHNSON, MARION F.
WYATT, MARION F. WYATT, JR., AND MARY RENNIE NEWBOLD;
ANY PERSONS WHO MAY HEREAFTER BE ADOPTED BY ANY OF THE NEPHEWS
OR NIECES OF JOHN M. W. HICKS, DECEASED, AND THE ISSUE OR LINEAL
DESCENDANTS OF THE BLOOD OF ANY SUCH ADOPTED CHILD; ANY PERSONS
WHO MAY HEREAFTER BE ADOPTED BY ANY CHILD OF ANY OF THE NEPHEWS
OR NIECES OF JOHN M. W. HICKS, DECEASED, AND THE ISSUE OR LINEAL
DESCENDANTS OF THE BLOOD OF ANY SUCH ADOPTED CHILD.

(Filed 29 April, 1953.)

1. **Wills § 34c—**

The statutes relating to the right of adopted children to take as dis-
tributees and heirs, G.S. 29-1, Rule 14; G.S. 28-149 (10); G.S. 48-23, have
no bearing upon whether an adopted child takes under a will except in so
far as they establish and define the parent and child relationship between
the adoptive parents and the adopted child, but whether an adopted child
comes within a particular class designated by testator as "children,"
"issue," "descendants," etc., must be determined by ascertaining the intent
of testator.

2. **Wills § 31—**

In ascertaining the intent of testator it is permissible, when necessary to
ascertain such intent, for the will to be considered in the light of the testa-
tor's knowledge of certain facts and circumstances existing at the time of
or after the execution of the will.

3. **Wills § 34c—**

As a general rule. in the absence of language showing a contrary intent,
a child adopted either before or after the execution of the will, but prior
to the death of testator, where the testator knew of the adoption in ample
time to have changed his will so as to exclude such child if he desired, such
adopted child shall be included in the word "children" when used to desig-
nate a class which is to take under the will.

4. **Same—**

It appeared in this case that testator knew of the adoption of a child
by his nephew, gave the child Christmas presents similar to those given
to each natural-born child of his other nieces and nephews, but did not
include such adopted child with testator's natural-born great nieces and
nephews as beneficiary of an irrevocable trust created after the adoption.
Some years later testator executed a codicil materially changing his will,
but without provision excluding the adopted child from a devise of the
*corpus* of testamentary trusts to the class. *Held:* The adopted child is
entitled under the will to share in the *corpus* of the trusts.

**5. Same—**

Under a testamentary provision for distribution of personalty among the children of a named person, a child adopted by such person after the testator's death does not take.

**6. Same—**

Under a provision in a will for division of personalty among "the living issue" of a named person, an adopted child of such person may not take, since the word "issue" means "lawfully begotten heirs of the body," and therefore the term may not include an adopted child.

APPEAL by J. Francis Paschal, guardian *ad litem,* from *Harris, J.,* January Term, 1953, of WAKE.

This action was instituted on 12 July, 1952, pursuant to the provisions of the Declaratory Judgment Act (G.S. 1-253 through G.S. 1-267), for advice and instruction to the plaintiff as trustee of the trusts created under the will of John M. W. Hicks, deceased, with respect to the questions hereinafter set out.

The facts necessary to an understanding of the questions involved in this appeal are as follows:

1. The testator executed his will on 8 December, 1926, and added a codicil thereto on 1 March, 1935. He died 17 March, 1944. At the time of his death he was a citizen and resident of Wake County, N. C., and his will and the codicil thereto have been duly probated and recorded in the office of the Clerk of the Superior Court in the aforesaid county.

2. Item Seven of the testator's will established twelve equal residuary trusts, one for each of his surviving nieces and nephews (except Frank Page Hicks, for whom it is stated in the codicil other provision had been made by the testator), to wit: William L. Wyatt, Robert J. Wyatt, Marion F. Wyatt, John Hicks Johnson, Louise Wyatt Norris, Ethel Hicks Weldon, Frances Hicks Garrett, Bertha Hicks Williamson, Minnie Hicks Williams, Julia Hicks Ade, Mary Johnson Hart, and Margaret Louise Johnson. The will provides that the beneficiary of each trust shall receive the income therefrom for life only. The *corpus* of each of these twelve trusts consists entirely of personal property, and no property therein is traceable to realty.

3. The plaintiff is the duly appointed, qualified, and acting trustee of the trusts set up under Item Seven of the will and the codicil thereto.

4. The pertinent provisions of the will and codicil which we are called upon to construe with respect to the distribution of the *corpus* of one of the above trusts, the beneficiary thereunder, to wit: John Hicks Johnson, having died on 2 July, 1951 (interpolating into the will proper the altering provisions of the codicil), are as follows:

"Each such respective separate and distinct trust shall cease and determine by the death of the respective life beneficiary of such separate and distinct trust.

"Upon the termination of any of the said several respective separate and distinct trusts the capital of that said respective trust shall be divided so far as practicable in kind among the surviving children of my nephews including children of Frank Page Hicks and the surviving children of my nieces at the time of the termination of that respective separate and distinct trust and shall be transferred and paid over to them absolutely and free from any trust and in equal shares, share and share alike, *per capita* and not *per stirpes,* the living issue of any predeceased child of any of my nephews and the living issue of any predeceased child of any of my nieces to take the share which his, her or their parent would have taken if living and the same to be divided between them, *per stirpes* and not *per capita.* But in the event that there shall be no one living of those among whom a division should be made as outlined above, then the capital of said trust shall be converted into cash and the cash shall be divided among the surviving descendants of William J. Hicks and his wife, Julia L. Hicks, my father and mother, in equal shares, *per capita* and not *per stirpes.*"

5. The defendants are all persons, born and unborn, who have or might have an interest in any of the twelve trusts.

6. On petition of the plaintiff, guardians *ad litem* were appointed as follows:

(a) J. Francis Paschal, guardian *ad litem* for the minor and unborn issue or lineal descendants of the blood of the nephews and nieces of the testator, John M. W. Hicks.

(b) William T. Joyner, Jr., guardian *ad litem* for the minor and unborn issue or lineal descendants of the blood of Marion F. Wyatt, Jr. Marion F. Wyatt, Jr., is the adopted son for life of Marion F. Wyatt, having been adopted on 2 December, 1929.

(c) Joseph C. Moore, Jr., guardian *ad litem* for Mary Rennie Newbold and her unborn issue or lineal descendants. Mary Rennie Newbold is the adopted daughter of Edith Wyatt Newbold (a daughter of Robert J. Wyatt). This child was adopted on 9 January, 1952.

(d) James H. Pou Bailey, guardian *ad litem* for any person and the issue and lineal descendants of such person, who may hereafter be adopted by any of the testator's nieces or nephews.

7. Each of the guardians *ad litem* filed an answer and appeared at the trial below in behalf of his wards. Answer was also duly filed by Marion F. Wyatt, Jr., and he was represented at the trial by counsel. No other defendants filed answer.

8. When this cause came on for hearing in the court below all parties who had filed pleadings appeared, waived trial by jury, and stipulated and agreed that the court should hear the entire matter without the inter vention of a jury, and render judgment in or out of term.

9. Among the findings of fact by the court are these: (a) That the testator, John M. W. Hicks, knew of the adoption of Marion F. Wyatt, Jr., by Marion F. Wyatt some fourteen years prior to the death of the testator; that at each Christmas he gave to Marion F. Wyatt, Jr., a present identical with that given to the natural-born children of his nieces and nephews; that this present was usually a five-dollar bill; (b) that in the vault at the testator's home there was found, after the death of testator, an envelope with the names of Marion F. Wyatt and wife, Maude Henley Wyatt, and Marion F. Wyatt, Jr., written thereon in testator's handwriting; that this envelope contained three five-dollar gold pieces; that similar envelopes were found in the vault for each of the families of the testator's nieces and nephews and that the contents of each envelope were similar; (c) that the testator in December, 1941, established a trust for the benefit of 31 named children of his nieces and nephews; that the 31 children named by the testator to share in the proceeds of the trust were all of the natural-born children of the testator's nieces and nephews then living; that the name of Marion F. Wyatt, Jr., was not included among the beneficiaries of this trust; that this trust has produced an income varying from approximately $37,000 to approximately $55,000 a year; and (d) that the testator kept in his own handwriting a book denoted by him as the "Family Record"; included therein were notations of the marriages of each of his nieces and nephews and of the births of children to each of these marriages; with the entry of a birth, there appeared the date and place and sometimes the baby's weight; on the appropriate pages relating to Marion F. Wyatt, there is an entry of the birth of a daughter now deceased; there is no entry for Marion F. Wyatt, Jr., nor does his name appear anywhere in this book.

10. It was stipulated in the case on appeal by counsel for the plaintiff and the defendant, Marion F. Wyatt, Jr., and the several guardians *ad litem,* among other things, that summonses in this action were regularly issued and served on the defendants; that all parties were properly before the court; that the facts duly agreed upon are incorporated in the judgment in the findings of fact by the court.

11. The court concluded as a matter of law that the word "children" and the word "child," as used in Item Seven of the will of John M. W. Hicks, include Marion F. Wyatt, Jr., and also include, as to any trust which thereafter terminates, any person who may hereafter be adopted for life by any of testator's nieces or nephews. The court further held that the word "issue" as used in the same item of the will includes Mary Rennie Newbold and her issue, and also includes any person who may hereafter be adopted for life by any child of any of testator's nieces or nephews and its issue. Judgment was entered accordingly, and J. Francis Paschal, guardian *ad litem,* appeals, assigning error.

*J. Francis Paschal, guardian ad litem, appellant.*

*Joyner & Howison for Marion F. Wyatt, Jr., appellee; W. T. Joyner, Jr., guardian ad litem, appellee; Joseph C. Moore, Jr., guardian ad litem, appellee; James H. Pou Bailey, guardian ad litem, appellee.*

*Mitchell, Capron, Marsh, Angulo & Cooney and Joseph B. Cheshire and Joseph B. Cheshire, Jr., for plaintiff, appellee.*

DENNY, J. The plaintiff seeks the advice and instruction of the Court as to the rights and interests of all persons, born and unborn, in the residuary trusts created by the will of John M. W. Hicks, particularly as to the rights therein of any child heretofore or hereafter adopted by any of the nieces or nephews of the testator, or of any child heretofore or hereafter adopted by any child of any of the nieces or nephews of the testator. This advice and instruction is sought not only for the guidance of the trustee in distributing the *corpus* of the trust which was terminated by the death of John Hicks Johnson, but in order that the trustee may be able to distribute the *corpus* of the eleven remaining trusts as they terminate, without the necessity for further litigation with respect to questions raised in this action. Therefore, we think the appeal properly presents for determination these questions:

(1) Is Marion F. Wyatt, Jr., the child of Marion F. Wyatt (a nephew of the testator), within the meaning of the word "children" as used in Item Seven of the testator's will and, therefore, a member of the class designated to take *per capita* in the distribution of the *corpus* of the trust which terminated upon the death of John Hicks Johnson?

(2) Was it the intent of the testator to include any child or children who might be adopted by any of his nieces or nephews, after his death, within the class designated as the surviving children of his nieces and nephews, and thus enable such adopted child or children to take *per capita* in the distribution of the *corpus* of the respective trusts terminating after the adoption of such child or children?

(3) Does the word "issue" as used in Item Seven of the will include Mary Rennie Newbold and her issue and any other child who may hereafter be adopted for life by any child of any of the testator's nieces or nephews and its issue?

The statute under which Marion F. Wyatt, Jr., was adopted provided that the order of adoption should have "the effect forthwith to establish the relation of parent and child between the petitioner and the child during minority or for the life of such child, according to the prayer of the petition, with all the duties, powers and rights belonging to the relationship of parent and child, and in case the adoption be for the life of the child, and the petitioner die intestate, such order shall have the further effect to enable such child to inherit the real estate and entitle it to

the personal estate of the petitioner in the same manner and to the same extent such child would have been entitled to if such child had been the actual child of the person adopting him." C.S. 185.

The status of an adopted child with respect to the inheritance of real property and the distribution of personal property has been changed substantially by Chapter 832 of the Session Laws of 1947 (G.S. 29-1, Rule 14), Chapter 879 of the Session Laws of 1947 (G.S. 28-149 (10)), and Chapter 300 of the Session Laws of 1949 (G.S. 48-23). The pertinent portion of the 1949 Act, codified as G.S. 48-23, reads as follows: "The final order forthwith shall establish the relationship of parent and child between the petitioners and the child, and, from the date of the signing of the final order of adoption, the child shall be entitled to inherit real and personal property from the adoptive parents in accordance with the statutes of descent and distribution." And our present statute of distribution, G.S. 28-149 (10), provides that, "An adopted child shall be entitled by succession, inheritance, or distribution of personal property . . . by, through, and from its adoptive parents the same as if it were the natural, legitimate child of the adoptive parents." Likewise, our statute of descents, G.S. 29-1, Rule 14, provides, "An adopted child shall be entitled by succession or inheritance to any real property by, through, and from its adoptive parents the same as if it were the natural, legitimate child of the adoptive parents."

However, the above statutes have no bearing on the questions presented on this appeal except in so far as they establish and define the parent and child relationship between the adoptive parents and the adopted child. Whether an adopted child is entitled to take under a will is usually dependent upon whether such child comes within a particular class designated by the testator as "children," "issue," "descendants," or "heirs of the body," etc., of a designated person or persons. And whether an adopted child comes within such class must be determined by ascertaining the intent of the testator. 57 Am. Jur., Wills, section 1174, page 768.

The intent of a testator is ordinarily to be ascertained from an examination of his will from its four corners. Even so, it is permissible, when necessary in order to ascertain such intent, for the Court to consider the will in light of the testator's knowledge of certain facts and circumstances existing at the time of or after the execution of the will. *Trust Co. v. Waddell, ante,* 342, 75 S.E. 2d 151; *In re Will of Johnson,* 233 N.C. 570, 65 S.E. 2d 12; *Trust Co. v. Bd. of National Missions,* 226 N.C. 546, 39 S.E. 2d 621; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17; *Heyer v. Bulluck,* 210 N.C. 321, 186 S.E. 356.

It seems to be the general rule that where no language showing a contrary intent appears in a will, a child adopted either before or after the execution of the will, but prior to the death of the testator, where the

testator knew of the adoption in ample time to have changed his will so as to exclude such child, if he so desired, such adopted child will be included in the word "children" when used to designate a class which is to take under the will. *Smyth v. McKissick,* 222 N.C. 644, 24 S.E. 2d 621; *Munie v. Gruenewald,* 289 Ill. 468, 124 N.E. 605; *Beck v. Dickinson,* 99 Ind. App. 463, 192 N.E. 899; *Mooney v. Tolles,* 111 Conn. 1, 149 A. 515, 70 A.L.R. 608; *Isaacs v. Manning,* 312 Ky. 326, 227 S.W. 2d 418; *In re Upjohn's Will,* 304 N.Y. 366, 107 N.E. 2d 492. *Cf. Phillips v. Phillips,* 227 N.C. 438, 42 S.E. 2d 604, and *Wilson v. Anderson,* 232 N.C. 212, 59 S.E. 2d 836; *S. c.,* 232 N.C. 521, 61 S.E. 2d 447, in which the rights of adopted children were determined by the construction of statutes, not testamentary provisions.

In the case of *Smyth v. McKissick, supra,* Ellison A. Smyth created an irrevocable trust agreement in 1932 for the benefit of certain named beneficiaries. Thereafter, in 1934 he executed a will under the terms of which the remainder of his estate was put in trust for the benefit of the same beneficiaries named in the trust indenture. The final distribution of the *corpus* of the trust under the will was directed to be made "upon the death of all," the testator's children and the death or remarriage of his daughter-in-law, but in no event earlier than 1944. The estate was then to be distributed to the children of his deceased children. Thomas Smyth, one of the children of James Adger Smyth (a son of the testator who died prior to the execution of the will), and a grandson of the testator, Ellison A. Smyth, was married in November, 1932, to Frances Thrower Smyth. Having no children born to them, in 1938, they adopted for life, David Hutchinson Smyth. It was admitted that the testator knew and approved of the adoption. He treated this child as he did the children born to his other grandchildren, giving him presents and keeping a photograph of him in his home. Thomas Smyth died in April, 1941, leaving a last will and testament by which he disposed of all his property to his widow. The testator, Ellison A. Smyth, died 3 August, 1942.

This Court, in passing upon the interest of the adopted child in the irrevocable trust which was created in 1932, held that the trust indenture was effective from the date of its execution and the adopted child took nothing thereunder. But, since the will did not become effective until the death of the testator and the testator knew and approved of the adoption, the adopted child took under the provisions of the will. The Court, in speaking through *Devin, J.* (now *Chief Justice*), said: "The will of Ellison A. Smyth spoke from his death in 1942. At that time Thomas Smyth was dead, leaving an adopted child. David Hutchinson Smyth had become in law the child of Thomas Smyth and Frances Thrower Smyth, as respects them, as much so as if he had been born to them by natural law. While his adoption did not constitute him an heir of Ellison

A. Smyth (*Grimes v. Grimes,* 207 N.C. 778, 178 S.E. 573), yet as the lawful child of Thomas Smyth he was entitled to take in substitution and as representative of his adopting father. He was then qualified in every legal aspect, as the 'child' of Thomas Smyth, to step into his father's shoes, and as the son of his father take property rights which had been set aside for his father." *Cf. Tankersley v. Davis,* 195 N.C. 542, 142 S.E. 765.

In the instant case the testator knew of the adoption of Marion F. Wyatt, Jr., and recognized him as a child of his nephew, Marion F. Wyatt. Each Christmas he gave him a present similar to that given to each natural-born child of his nieces and nephews. But, it is argued, since Marion F. Wyatt, Jr., was not included as a beneficiary under the trust created by the testator in 1941, and all 31 of the surviving natural-born children of his nieces and nephews were included, that this fact should negative any intent on the part of the testator to include Marion F. Wyatt, Jr., in his will. We do not think that the failure to include Marion F. Wyatt, Jr., as a beneficiary under the terms of the 1941 trust agreement perforce excludes him from the will. It might be argued that the reason he was not included in the 1941 trust agreement was because he was included in the will. Furthermore, the testator made considerable changes in his will in 1935 by the execution of a codicil thereto. This codicil was executed more than six years after the adoption of Marion F. Wyatt, Jr., and the testator inserted no provision therein indicating an intent to exclude him as a member of the class he had designated to take the *corpus* of these trusts as they terminate. Hence, we concur in the ruling of the court below with respect to the right of Marion F. Wyatt, Jr., to take under the provisions of the will.

As to the second question before us, it seems to be well settled that under a testamentary provision for children of a named person, a child adopted by such person after the testator's death does not take. To hold otherwise would make it possible for property of a testator to be diverted to strangers of his blood without his knowledge or consent. Therefore, in our opinion this question should be answered in the negative and we so hold. Among the opinions from other jurisdictions in accord with this view, we cite the following: *In re Fisler,* 131 N. J. Eq. 310, 25 A. 2d 265; *Moffet v. Cash,* 346 Ill. 287, 178 N.E. 658; *Comer v. Comer,* 195 Ga. 79, 23 S.E. 2d 420, 144 A.L.R. 664; *Everitt v. LaSpeyre,* 195 Ga. 377, 24 S.E. 2d 381; *Re Nelson,* 143 Misc. 843, 258 N.Y.S. 667; *Sanders v. Adams,* 278 Ky. 24, 128 S.W. 2d 223; *Corr's Estate,* 338 Pa. 337, 12 A. 2d 76; *Wildman's Appeal,* 111 Conn. 683, 151 A. 265; *Puterbaugh's Estate,* 261 Pa. 235, 104 A. 601, 5 A.L.R. 1277; *Lichter v. Thiers,* 139 Wis. 481, 121 N.W. 153; *Casper v. Helvie,* 83 Ind. App. 166, 146 N.E. 123; *Malek v. University of Missouri,* 213 Mo. Appeal 572, 250 S.W. 614;

*Parker v. Carpenter,* 77 N.H. 453, 92 A. 955; *Cochran v. Cochran,* 43 Tex. Civ. App. 259, 95 S.W. 731.

What we have heretofore said is sufficient to require a negative answer to the third question posed for decision. Nevertheless, there is another impelling reason why this question should be so answered.

The testator provided in his will that, "the living issue of any predeceased child of any of my nephews and the living issue of any predeceased child of any of my nieces to take the share which he, her or their parents would have taken if living and the same to be divided among them, *per stirpes* and not *per capita*." This necessitates a consideration of what the testator meant by the use of the word "issue." Nothing else appearing, it will be presumed that he used it in its generally accepted legal sense.

The word "issue" when used in a will is generally construed as a word of limitation and means "lawfully begotten heirs of the body." *Harrell v. Hagan,* 147 N.C. 111, 60 S.E. 909, 125 Am. St. Rep. 539; *Ford v. McBrayer,* 171 N.C. 420, 88 S.E. 736; *Bowden v. Lynch,* 173 N.C. 203, 91 S.E. 957; *Love v. Love,* 179 N.C. 115, 101 S.E. 562; *Edmondson v. Leigh,* 189 N.C. 196, 126 S.E. 497. Or its meaning may be expressed as inclusive of all persons descended from a common ancestor. Bouvier's Law Dictionary (Third Edition), Volume 1. Likewise, the natural and ordinary meaning of the word "issue" is understood to include only a child or children born of the marriage of the ancestor or their descendants. And regardless of any provisions that may be contained in an adoption law with respect to the parent and child relationship, or the right of an adopted child to take by, through, and from its adoptive parents, the adoption of a child under such law does not make such adopted child a lawfully begotten heir of the bodies of the adoptive parents.

Hence, we hold that Mary Rennie Newbold and her issue and any other child who may hereafter be adopted by any of the testator's nieces or nephews and its issue may not take under the provisions of the last will and testament of John M. W. Hicks.

The judgment of the court below will be modified in accord with this opinion.

Modified and affirmed.